# Louisville & Nashville Railroad Company v. Bouldin.

*Action for Damages by Administrator of Employé who was Killed.*

1. *Defect in ways; must be an adherent part of the same; allegations of the complaint.*—A foreign substance, having no other connection or relation with the track of a railroad than arises from its having been left in dangerous proximity thereto, is not a defect in the condition of any such track or road-way; and when in an action against a railroad by the administrator of a deceased employé to recover damages, the complaint alleges that the intestate's death was due to a defect in the condition of the defendant's railroad track, in that an oil-box, which was a part of a car, had been left so near the track as to cause the deceased to be thrown from the foot-board of the engine where he was standing, as his duty required, does not aver a defect in the condition of the track, but simply an extraneous obstruction, and is, therefore, insufficient as alleging a cause of action under the first clause of section 2590 of the Code, which provides that the employer is liable for injury to his employés when the injury is caused by any defect in the condition of the ways, works, machinery or plant used in or connected with the business of the employer.

2. *Negligence of superintendent in not keeping road-way in proper condition; when not averred in complaint.*—When in such an action it was averred in the complaint, that the oil-box which was left so near the defendant's track was a defect in the condition of the defendant's

road-way or track, and that said defect arose from or had not been discovered or remedied owing to the negligence of the defendant or its yard-master, who was intrusted with the duty of seeing that the ways, works, machinery or plant used by the company at that place were in proper condition, there is not averred a cause of action under the second clause of section 2590 of the Code, which provides that the employer is liable for injuries to his employés, caused by the negligence of any one in the former's employ, who has superintendence intrusted to him, committed while in the exercise of such superintendence; the existence of such obstruction not being a defect in the condition of the road-way of the defendant.

3. *Averments of negligence; sufficiency at common law.*—Such a complaint is insufficient under the common law, since the negligence complained of was alleged to be that of the defendant or its yard-master, and there were no facts averred importing the defendant's liability both for its own and its yard-master's negligence.

4. *Same; same.*—Where in an action against a railroad company to recover damages for the alleged negligent killing of one of its employés, the negligence counted upon in the complaint was alleged to be that of the defendant or its yard-master, in order for the complaint to be sufficient under the common law, there must be facts averred importing the defendant's liability both for its own and its yard-master's negligence; otherwise such complaint is insufficient.

5. *Sufficiency of complaint; failure to aver name of party to whose negligence injury is imputed.*—In an action for damages against a railroad company, by the administrator of a person killed while in its employment as a switchman, a count of the complaint which alleges that the injury was caused by an obstruction upon or near the road-bed, which arose from or had not been discovered or remedied owing to the negligence of the defendant, or some one in the defendant's employment and intrusted with the duty of seeing that its ways, works &c., were in proper condition, but fails to aver the name of the person intrusted with such duty, or to aver an ignorance of his name, is insufficient and demurrable, in that it averred no facts importing defendant's liability both for its own and its employés negligence, and further, because of its failure to aver the name of the employé to whom the negligence complained of was imputed, or an ignorance of his name.

6   *Same; failure to aver knowledge by engineer of plaintiff's perilous position.*—In an action for damages against a railroad company by the administrator of a person who was killed while in its employ as a switchman, a count of the complaint which avers that the injury complained of was caused by reason of the negligence of the defendant's engineer, in running an engine past or by an obstruction lying near to the track, while plaintiff's intestate was upon the foot-board to the engine and exposed to the peril of such obstruction, whereby he was injured and killed, is insufficient and demurrable, in that it fails to aver that the engineer knew or had reason to believe that the plain-

[Louisville & Nashville Railroad Company v. Bouldin.]

tiff's intestate was in such position as that he might be injured in passing the obstruction.

7. *Action for damages; evidence as to whether deceased was ordinarily careful, inadmissible.*—In an action against a railroad company to recover damages for the alleged negligent killing of plaintiff's intestate, who was, at the time of the injury, in the employment of the defendant, and in the discharge of his duties as switchman, it is error to allow the plaintiff to ask a witness, who was with the deceased at the ime of the accident, in the discharge of the same duties, to "State whether or not you were ordinarily careful in keeping a lookout that day?" the day of the accident; such question calling for the opinion tof the witness as to what constituted proper care, and his conclusion as to whether it had been exercised on that day.

8. *Contributory negligence; when properly left for the determination of the jury.*—Where, in an action 'against a railroad company to recover damages for the negligent killing of the plaintiff's intestate, who was at the time of the alleged accident, in the discharge of his duties as a switchman in the defendant's yard, there was evidence that while the deceased was riding upon the foot-board of one of the defendant's engines he had been knocked therefrom by an obstruction lying near to the track, and there was other evidence that the deceased had been standing on the end of the foot-board opposite to the side of the track where the obstruction lay, and that after the accident he was found lying upon the other side of the track near the obstruction, the general charge requested by the defendant, upon the idea that the evidence showed that the plaintiff's intestate was guilty of contributory negligence, was properly refused ; the question of contributory negligence being one for the determination of the jury, as was also the question as to whether the plaintiff's intestate fell under the trucks in his effort to pass over the bumpers from one end of the foot-board to the other, or received his injury in consequence of his foot striking against the obstruction after he had so passed from one side to the other.

9. *Charge to the jury; ordinary dangers incident to employment.*—In such a case, a charge which instructs the jury that "if the jury believe from the evidence that the injuries sustained by plaintiff's intestate, which caused his death, resulted from the ordinary dangers incident to the service he was performing in defendant's employment, then they will return a verdict for the defendant," is properly refused as being calculated to mislead and confuse the jury.

APPEAL from the Circuit Court of Morgan.

Tried before the Hon. H. C. SPEAKE.

Sallie M. Bouldin, as administratrix of Richard Bouldin, deceased, brought the present action against the Louisville & Nashville Railroad Company, the appellant, to recover for the alleged negligent killing of her intes-

tate, who was an employé of the defendant and engaged as a switchman at the time he received the injuries that caused his death.

The complaint contained five counts. The averments of the first count are sufficiently stated in the opinion. The second count was as follows: "And plaintiff claims of the defendant the further sum of fifteen thousand dollars, ($15,000) as damages for that, while the plaintiff's said intestate was engaged in the service of the defendant as aforesaid, on or about the 30th day of August, 1892, and while he was standing upon the foot-board (in front) of a moving engine in or near the defendant's yard in or near the said city of Decatur, in the discharge of his duty as such servant or employé of the defendant, his foot struck against an obstruction, which had been negligently permitted to be and remain upon the defendant's road-bed, so as to be a peril to plaintiff's said intestate while so in the discharge of his duty, thereby causing him to be thrown to the ground and to receive personal injuries which caused his death, on or about the same day, and plaintiff shows that said obstruction arose from, or had not been discovered or remedied owing to the negligence of the defendant, or of some person in the service of the defendant, and intrusted by it with the duty of seeing that its ways, works, machinery or plant, were in proper condition."

The averment of the third count was, that while deceased was standing on the foot-board of a moving engine, in the discharge of his duty, he was struck by an obstruction negligently permitted to remain near the defendant's track, and that the injury was caused by reason of the negligence of Oakley in the superintendence entrusted to him, &c., he being yard-master, and negligently permitting the obstruction to remain near the track.

The fourth count alleged that the deceased was injured while serving upon the engine in obedience to the orders of the yard-master, to whose directions the deceased was bound to conform, &c., and that the injuries were caused by the negligence of the yard-master in directing the deceased to perform such service while the obstruction was negligently permitted to remain near the track.

The fifth count of the complaint was as follows: "The

plaintiff claims of the defendant the further sum of fif-
teen thousand dollars ($15,000) as damages for that,
while the plaintiff's said intestate was engaged in the
service or employment of the defendant as aforesaid, and
while he was upon a moving engine upon one of the de-
fendant's tracks, in or near to the city of Decatur, in said
Morgan county, in the discharge of his duty as such
servant or employé, he was struck by an obstruction
upon or near to defendant's said track, and was thereby
thrown to the ground, and injured, so that he died on or
about the same day. And said injuries to the plaintiff's
said intestate were caused by reason of the negligence
of the defendant's engineer, who had charge or control
of said engine, in running said engine past or by said
obstruction, while plaintiff's intestate was in such a po-
sition upon said engine as to be exposed to peril by rea-
son of said obstruction, whereby plaintiff's said intes-
tate was injured and killed.''

The defendant demurred to the first count on the
grounds, in substance, 1st. that the oil-box was not a de-
fect in the condition of the ways, works, plant, &c.; 2,
because it appears that the oil-box was a foreign sub-
stance in no way affecting the condition of the works,
&c.; 3d, because the count is insufficient and shows no
cause of action; 4th, because the count does not aver that
the oil-box was left where it was by any one for whose
action defendant is or would be responsible.

The defendant demurred to the second count on the
grounds, in substance, 1st, because it does not aver that
the person entrusted by the defendant with the duty
of seeing that its works, &c. were in proper condition
was some one other than the plaintiff's intestate; 2d, be-
cause it was not averred that the obstruction was left
where it was by any one for whose action the defendant
was responsible; 3d, because the count did not allege the
name of the person entrusted with the duty of seeing
that defendant's ways were in proper condition. It is
not necessary to notice the demurrers to the third and
fourth counts, as they are not insisted on in argument
of counsel. Defendant demurred to the fifth count be-
cause, 1st, it did not aver that the oil-box was left where it
was by any one for whose action the defendant was re-
sponsible; 2d, because the count did not allege that the
engineer knew plaintiff's intestate was in a position on

the engine to be exposed to peril by reason of the alleged obstruction ; 3d, because the count does not aver the facts of which said alleged negligence of the engineer consisted in running the engine past or by said obstruction. These demurrers to the complaint were overruled. The defendant pleaded the general issue, and several special pleas, setting up the contributory negligence of the plaintiff's intestate. The plaintiff demurred to the second and six special pleas, which were sustained, and upon the other pleas issue was joined.

The evidence shows that the plaintiff's intestate was killed on August 3, 1892, about 9 :30 o'clock in the shop-yard of the defendant in New Decatur, and that he was a switchman of long experience ; that at the time he was killed the engine on which he was switchman, was engaged in placing cars in and taking them out of the yard; that the engine, without any cars, backed up from the main track on track number 5, for the purpose of getting a car and placing it on track number 7 ; that Bouldin, the plaintiff's intestate, and one Robertson who was foreman of the engine, were standing upon the foot-board just to the rear of the tender, when the engine backed in upon track number 5; that this track was straight, and that obstructions along the track could be easily seen. On the left hand side of track No. 5. and nearly midway between the main track and the freight car repair shop was an oil-box. An oil-box is a box that belongs over the car axle in which they keep packing and oil to preserve the axles and keep them from getting hot, and the weight of the car rests on this box and axle. This box has a lid over it, and is placed just above the wheels of the car and is made of heavy material—cast iron. They are usually about 14 inches long and from 8 to 10, perhaps 12 inches high, and about 6 or 8 inches from the side. The oil-box was 13½ inches from the rail by measurment, and the foot-board stands about 12 inches beyond the rail, and it cleared the oil-box as the engine passed it. At the time of the accident there was a great deal of work being done in the yard, and Bouldin had been cautioned about the dangers incident to his employment when switching in the yard when there was much work going on, and it was shown that Bouldin knew of Rule 130 of the defendant, which especially cautions employés against taking any risks, which

by the exercise of their own judgment and proper care they could protect themselves against.

The uncontroverted evidence shows that when the engine backed in Bouldin was on the left hand side of the switch board on the end of the tender, which was in front in the direction in which the engine was moving, as it backed up to the freight car repair shops to couple on some cars there. After this coupling was made, the engine and cars started, the engine moving forward, to the main track over track No. 5, in order to transfer the cars to track No. 7, and Bouldin was standing on the left hand side of the switch-board at the end of the tender as the engine moved forward. He was found, on the right hand side of the track near the oil-box and in order to have passed from the left to the right hand side of the switch-board must have climbed or passed over the coupling which connected the tender with the cars. It was a matter of dispute whether the accident was caused by his falling off the switch-board when attempting to cross over, or whether his foot struck the oil box. The evidence is uncontradicted that the oil-box did not appear to have been moved. There was no trace of its having been moved in the cinders which were spread in between and along the tracks. There were, however, impressions on the oil-box which might have been made by a man's shoe coming in contact with it, or it might have been caused by the wreck or handling of the oil-box afterwards.

The only two eye witnesses to the accident were Robertson and Harbin, who was the engineer on the engine at the time. The engineer Harbin testified that, as he was backing in, he saw this oil-box which was two or three car lengths from the repair shop to which the engine was backing. He accordingly slowed up the speed of the engine "so it was barely moving" until engine passed the oil-box, and finding that the foot board would clear the oil-box, then went on. He did the same thing after the accident and each time the oil-box cleared the end of the foot-board an inch or more. When the engine backed past the oil-box Bouldin and Robertson were talking about the cars that they were to take out. The track was unobstructed, and there was nothing to prevent either of them from noticing the oil-box. He further testified that after the engine backed in and

coupled on to the cars, he started the engine forward, but at the freight shop he looked back until the car passed outside the building, and passed over the switch when he stopped, and then he looked back waiting for the switchman to come around and throw the switch. Being told by the fireman that he saw no one, he got down and looked up the track to see if there was any one to throw the switch, as he supposed both switchmen had gotten off. He saw them carrying Bouldin off the yard. He had fallen on the right hand side coming out of the building, and had fallen near the oil-box. There was blood on the track. He further testified that when switchmen are standing on the foot-board, "I think they hold themselves when they are looking out by projecting their foot out beyond the foot-board in a downward position and holding by the heel as a sort of brace to hold him, while the engine was running and he was looking out. It would not be necessary for him to stand that way for that purpose. Some might stand that way and some not." He was then asked this question: "That position is one frequently occupied by a brakeman?" and answered: "Yes, in looking out." The defendant objected to this question and answer, because irrelevant and immaterial, but the court overruled the objection and the defendant excepted.

Robertson testified as a witness for the plaintiff, that after the coupling was made at the repair shops by which the car was coupled to the engine, he gave the signal to the engineer to start, and the engine and car moved off, that Bouldin was, at that time on the left hand side of the engine on the foot-board at the end of the tender, and that the next duty that Bouldin had to perform was to throw the switch at the end of the track number 5, which was at the right hand side of the track going out, so that the engine and car could be run on to track number 7. That Bouldin was run over by the car and was picked up on the right hand side of the track, which was on the opposite side from the side of the tender on which he was standing when the car started off; and that he was found very near the oil-box. The testimony shows that he could have performed his duty in throwing the switch, as well by remaining on the left hand side of the bumpers, which was a safe place, and then getting off and going to the switch, as by attempt-

ing to cross over the bumpers from the left hand side of the foot-board to the right hand side, and that crossing over the bumpers, to get from the left to the right hand side of the foot-board, was dangerous.

During the examination of the witness Robertson, he was asked the following questions: "State whether or not you were ordinarily careful in keeping a lookout on that day?" The defendant objected to this question as irrelevant, immaterial and incompetent. The court overruled the objection, and the defendant duly excepted. And the witness answered: "We were not more careful on that day than any other." The defendant moved to exclude this answer, and duly excepted to the court's overruling his motion. The defendant asked this witness the following question: "Wasn't it a great deal more probable that in crossing over those bumpers that he should have fallen, lose his hold in some way, than that he struck that oil-box?" On motion of the plaintiff the court refused to permit this question to be answered, and the defendant duly excepted.

W. E. Oakley, as a witness for the defendant, testified that he was the defendant's yard-master at Decatur at the time of the killing of Bouldin, and that it was his duty to go in there expecting obstructions, and in event rubbish was piled up or other obstruction requiring a number of men to move it, it was his duty to make application to the officer in charge of the department to remove them and ask the foreman of the defendant where the engine was working to have the tracks cleared. A switchman going where Bouldin was would necessarily have to see that the tracks were cleared to perform his duty. This witness further testified that the track in the yard of the defendant was in proper condition, and there were no obstructions upon track No. 5, at the time of the accident; and that the oil-box which was lying near the track had fallen down from a pile of material near the track No. 5.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe the evidence, they will find for the defendant." (2.) "I charge you, gentlemen, as a matter of law, that the oil-box mentioned and de-

13

scribed in plaintiff's complaint in this action, was not a defect in the condition of the way or plant connected with or used in the business of the defendant, and the defendant is not liable to the plaintiff in this case under any allegation in plaintiff's complaint to the effect that the injury to plaintiff's intestate was caused by reason of any defect in the condition of the ways, works, condition or plant connected with or used in the business of the defendant." (3.) "I charge you, gentlemen of the jury, as a matter of law, that the oil-box mentioned and described in the plaintiff's complaint in this action was not a defect in the condition of the way or plant connected with or used in the business of the defendant, and it makes no difference whether said alleged defect arose from or had not been discovered or remedied owing to the negligence of the defendant, or of one W. E. Oakley, who was then and there the defendant's yardmaster at Decatur, who, if you believe from the evidence, was entrusted by the defendant with the duty of seeing that the works, ways, machinery or plant of the defendant in or near to the defendant's said yard, where the said injury occurred, were in proper condition, the plaintiff is not entitled to recover of defendant under these allegations in said complaint." (4.) "I charge you, gentlemen of the jury, that if you believe the evidence you will find that the intestate, Bouldin, left the freight building on the left hand side of the foot-board, and that it was his duty to remain at said place until said engine should reach the switch to allow said Bouldin to let said engine and car off of track number 5 by turning said switch so that it would enter track number 7, and that no duty to be performed by the said Bouldin required him to leave his position on the left hand side of said foot-board to go to the right hand side of said foot-board, and that [if] he left the left hand side of said foot-board and got on to said right hand side without having to perform any duty in so doing, this was a voluntary act on his part, and if you believe he thereby received the injuries which produced his death, his administratrix is not entitled to recover, and your verdict should be for the defendant." (5.) "I charge you, gentlemen of the jury, that the evidence in this case is uncontradicted that the plaintiff's intestate, Richard M. Bouldin, could have seen the oil-box mentioned as they

approached the freight house on track number 5, and that it was a part of his duty to see said oil-box, and if you believe from the evidence that the said Richard M. Bouldin protruded his foot beyond the foot-board of the engine, as said engine was pulling out from said freight house, so that his foot came in contact with said oil-box, then this act on the part of said Bouldin was such contributory negligence on his part as would prevent a recovery by his administratrix, and if you believe said evidence your verdict should be for the defendant."
(6.) "I charge you, gentlemen of the jury, as a matter of law, that the oil-box mentioned and described in plaintiff's complaint was not a defect in the condition of the way or plant connected with or used in the business of the defendant." (7.) "Under the law in this State, gentlemen of the jury, if the character of any particular danger is so simple that it could be as well ascertained at a single view as at many, and that it was the duty of said Bouldin to ascertain whether or not he could safely protrude his foot beyond the edge of the foot-board of the engine, in passing by where said oil-box was by his passing along said track to enter said building to obtain said car, and that he afterwards on coming away from said building protruded his foot beyond the edge of the foot-board, and it thereby came in contact with the oil-box mentioned, and thereby he received injuries which produced his death, then I charge you, as a matter of law, that his administratrix is not entitled to recover, and your verdict must be for the defendant."
(8.) "Under the evidence in this case, I charge you that there was sufficient room for the engine and foot-board to pass said oil-box without danger of coming in contact with it, and that this fact Bouldin is chargeable with knowledge of, whether he in fact knew it or not, and that on coming out from said freight house, if you believe from the evidence that he protruded his foot beyond the foot-board so that it came in contact with said oil-box, he was guilty of such negligence on his part as proximately contributed to the injury which produced his death, and your verdict should be against the plaintiff, and in favor of the defendant." (9.) "Under the evidence in this case, the plaintiff has failed to prove the allegations of the first count in her complaint, and if you believe the evidence as to such count, your verdict

should be in favor of the defendant.'' (10.) "If the jury believe from the evidence that the injuries sustained by plaintiff's intestate which caused his death, resulted from the ordinary dangers incident to the service he was performing in defendant's employment, then they will return a verdict for the defendant.'' (11.) "The place where Bouldin was standing upon the foot-board was a comparatively safe place, and if he left said place and thereby he was injured, then your verdict should be for the defendant.'' (12.) "If you believe from the evidence that the injury resulted to Bouldin by reason of his foot protruding beyond the end of the foot-board and thereby coming in contact with the oil-box, your verdict should be for the defendant.''

There were verdict and judgment for the plaintiff, assessing her damages at $5,000. The defendant appeals from this judgment, and assigns as error the several rulings of the trial court to which exceptions were reserved.

THOS. G. JONES, for appellant.—The first count is bad both under the statute and at common law. It does not aver enough to show any breach of duty to an employé at the common law. It shows no fault of the defendant in not remedying the defect, or keeping the track free of obstructions.—M. & M. R. R. Co. v. Smith, 59 Ala. 252. It is not averred that Oakley, whose duty it was to see to or remedy the matter was incompetent, or that defendant had been guilty of any fault, either in appointing or retaining him; and at the common law Oakley and the intestate were fellow servants, and Oakley's negligence was one of the risks of the service. His negligence was not a breach of any corporate duty due Bouldin. The count, therefore, is bad at the common law. It is not good under the first clause of the employer's act; since the oil-box was not a "defect" within its meaning.—K. C., M. & B. R. R. Co. v. Burton, 97 Ala. 240; H. A. & B. R. R. Co. v. Dusenberry, 94 Ala. 413.

2. The second count of the complaint was subject to the same objections as were raised to the first count, and was also insufficient and demurrable upon the several grounds interposed.—M. & O. R. R. Co. v. George, 94 Ala. 214.

On the undisputed facts, as matter of law, plaintiff's intestate was guilty of contributory negligence, which precluded his recovery.—*L. & N. R. R. Co. v. Hall*, 87 Ala. 719; *M. & B. R. R. Co. v. Holborn*, 84 Ala. 133; *H. A. & B. R. R. Co. v. Walters*, 91 Ala. 440.

S. T. WERT and R. W. WALKER, *contra*.—The first count of the complaint shows that the injury to plaintiff's intestate was the result of his foot coming in contact with a piece of iron, called an oil-box, which had been left so near defendant's track as to strike the intestate's foot while he was standing at his post on the engine, and that the fact that said oil-box was left there was owing to the negligence of the defendant, or its yard-master, who was intrusted with the duty of seeing that the track was in proper condition. The averments of this count clearly show that the yard-master was intrusted with superintendency of the track at the place where the injury occurred, and that the injury occurred by reason of his negligence in the exercise of such superintendence. The count alleges a case clearly within the rule stated in *K. C., M. & B. R. R. Co. v. Burton*, 97 Ala. 240.

2. There was evidence that the engineer was negligent, as charged in the fifth count. There was evidence to show that the engineer knew, or had reason to believe, that Bouldin was exposed to the peril from which the injury resulted, and that he failed, after he had such knowledge or reason to believe such fact, to exercise that care and diligence which a man of ordinary prudence would have exercised, under like circumstances, to have prevented the accident. It was the engineer's duty to warn the switchmen of the dangerous obstruction. Certainly, there was evidence to go to the jury on the question of the engineer's negligence.—*A. G. S. R. R. Co. v. Richie*, 99 Ala., 346; *L. & N. R. R. Co. v. Watson*, 90 Ala. 68; *Hissong v. R. & D. R. R. Co.*, 91 Ala. 514; *K. C., M. & B. R. R. Co. v. Crocker*, 95 Ala. 414; *Elyton Land Co. v. Mingea*, 89 Ala. 521; *Oregon Short Line v. Tracey*, 66 Fed. Rep. 931.

McCLELLAN, J.—The first count of the complaint alleges that while the intestate, Bouldin, was rightfully standing on the foot-board of a moving switch engine, with his foot projecting over the edge of said board, his

foot came in contact with an oil-box which had been left
on the defendant's road-way, and so near to the rail of
defendant's railway as to strike Bouldin's foot, whereby
he was thrown to the ground, where he was run over by
the engine, and killed, &c.; and that said oil-box, "so
left upon the defendant's roadbed, and so near to the
rail of its track, was a defect in the condition" of de-
fendant's said roadway or track; and that said defect
arose from, or had not been discovered or remedied ow-
ing to, the negligence of the defendant or of W. E. Oak-
ley, "who was then and there the defendant's yard-
master, and was intrusted by the defendant with the
duty of seeing that the ways, works, machinery, and
plant of the defendant in and near the defendant's said
yard, where said injury was received, were in proper
condition." In drawing this count, the pleader obvi-
ously intended to present a case under clause 1 of § 2590,
of the Code. It is clear—confessed, indeed—that this
count is not good under that subdivision, because it
shows that the oil-box was a foreign substance, having
no other connection or relation with or to the track than
arose from its having been left in dangerous proximity
thereto, and hence was not a defect in the condition of the
track (the track was not at all defective), but a mere ex-
traneous obstruction to the proper and safe use of the
track, as would have been a car standing upon it when
this engine was moving along there.—*Railroad Co. v.
Burton*, 97 Ala. 240, 246.

But it is insisted that, whatever may have been the
purpose of the pleader, this count avers every fact essen-
tial to a recovery under clause 2 of said section, as for
the negligence of a person in the employment of the de-
fendant having superintendence intrusted to him, com-
mitted while in the exercise of such superintendence.
This position is based on the averment of the complaint
that Oakley was the yard-master of the defendant in re-
spect to the yard where the injury was inflicted, and was
intrusted with the duty of seeing that the ways, works,
machinery and plant there used by the defendant were
in proper condition. The court cannot judicially know
from the mere fact that Oakley was yard-master that he
was intrusted with the superintendence in respect of
keeping the tracks in the yard free from obstructions;
and, so far from the other averment just set out being

[Louisville & Nashville Railroad Company v. Bouldin.]

the equivalent of a statement that he was intrusted with such superintendence, it excludes the idea of superintendence in relation to obstructions by limiting the duty alleged to have been intrusted to him to seeing that the track was free from defects and in proper condition. The existence of this obstruction, confessedly, not being a defect in the condition of the ways of the defendant, and the track, notwithstanding its existence, being in perfect condition, it is clear that, on the averments of this count, Oakley had performed the full measure of the duty intrusted to him of seeing that the ways were in proper condition. The count shows that the way was in proper condition, and hence it fails to impute negligence to Oakley.

Nor is the count a good one under the common law. It imputes negligence in the alternative either to the defendant or to Oakley. If it was Oakley's negligence, the defendant is not liable, unless he had superintendence intrusted to him, and was negligent while in the exercise of such superintendence, as we have seen ; and this is not alleged. The allegation being that the negligence was that of the defendant or Oakley; facts must be averred importing the defendant's liability both for its own and Oakley's negligence. Such facts are not averred ; and, in any view, the count is bad.—*Railroad Co. v. Dusenberry*, 94 Ala. 413.

The second count is open to the same objection. While it refers to the oil-box as an "obstruction," it manifestly uses this word as synonymous with "defect" in the ways, works, &c., and alleges that the "obstruction" arose from, or had not been discovered or remedied owing to, the negligence of the defendant, or some one employed, &c., and intrusted with the duty of seeing that the ways, &c., were in proper condition. This count, considered as under clause 1 or 2 of the statute, was further bad for not averring the name of the person intrusted by the defendant with a duty in the premises, or for not averring ignorance of the name of such person. *Railroad Co. v. George*, 94 Ala. 199, 214, 215.

We do not consider the question whether the second count shows contributory negligence, because that objection is not specifically pointed out by the assignments of demurrer. We construe the assignment which is relied on in this connection to have reference to the failure

of the count to aver the name of the person "intrusted with the duty," &c., and its purpose to be to impart emphasis to the necessity for such allegation, as, *non constat*, that person may have been the plaintiff himself:

The demurrers interposed to counts 3 and 4 are not insisted on in the brief of appellant's counsel.

As there was room (a fact to be assumed on the averments of the fifth count) for the safe moving of the engine and train past the obstruction, the engineer was not guilty of negligence in respect of Bouldin, unless he knew or had reason to believe that the latter was in such position on the engine or cars as that he might be injured in passing the oil-box. Count 5 is, therefore, bad for not averring such knowledge or reason to believe that Bouldin was in an unsafe position on the part of the engineer.

The court should not have allowed plaintiff to ask the witness Robertson the question : "State whether or not you were ordinarily careful in keeping a lookout that day?" This called for the opinion of the witness as to what constituted proper care, and his conclusion whether it had been exercised on that day.

The general charge requested by defendant was properly refused on the pleadings and evidence before the court and jury at the trial. The argument in support of the exception reserved to its refusal proceeds on the idea that the evidence shows contributory negligence on the part of Bouldin. This whole question was one for the determination of the jury, in our opinion, as was also the question whether Bouldin fell under the trucks in his effort to pass from one end of the foot-board to the other, over the bumpers, or received his injuries in consequence of his foot striking against the oil-box after he had passed over the coupling between the car and tender. If they found the latter to be the fact, the other circumstance of his having come to the place where he was hurt, and which was a proper place for him to be, from the other side of the tender, is of no consequence.

Charges 1, 4, 5, 7, 8, 11 and 12 were properly refused. Charges 2, 3, 6 and 9 should, on the considerations we have advanced with reference to counts 1 and 2, have been given.

We understand the tenth charge refused to defendant

to mean only this : That if Bouldin's death resulted from the ordinary dangers incident to the service in which he was engaged, as contradistinguished from a danger resulting from or enhanced by the negligence of the defendant, or of some employé for whose negligence the defendant is liable under the statute, the jury should find for defendant; but whether the jury would have so understood it or not in this case is much to be doubted. It was, we think, calculated to confuse and mislead the jury when considered by them in connection with the evidence, and the court did not err in refusing to give it.

For the errors pointed out, the judgment must be reversed. The cause will be remanded.

Reversed and remanded.