(83 South. 55)
GULF STATES STEEL CO. v. CARPEN-
TER. (7 Div. 8.)

(Supreme Court of Alabama. June 19, 1919.
Rehearing Denied. Oct. 23, 1919.)

MASTER AND SERVANT ⊜⟶287(4)—EVIDENCE
INSUFFICIENT TO SHOW NEGLIGENCE OF CO-
EMPLOYÉ CAUSING INJURY.

In action under Employers' Liability Act
for injury sustained by plaintiff operating an
engine at defendant's steel plant when his en-
gine collided with an engine operated by another
employé, the charge being that such other em-
ployé negligently allowed his engine to stand
on the switch leading off from track upon which
plaintiff was operating his engine and so near
as to cause the collision, *held*, defendant was
entitled to general charge.

Appeal from Circuit Court, Etowah Coun-
ty; O. A. Steele, Judge.

Action by Charles F. Carpenter against
the Gulf States Steel Company. Judgment
for plaintiff, and defendant appeals. Re-
versed and remanded.

Hood & Murphree, of Gadsden, for appel-
lant.

P. E. Culli and Victor Vance, both of Gads-
den, for appellee.

SAYRE, J. This case went to the jury on
counts 3, 4, and 5. These counts alleged, in
agreement with the undisputed evidence,
that plaintiff, appellee, while operating an en-
gine for defendant at its steel plant, was in-
jured by a collision with another engine, en-
gaged in the same employment and operat-
ed by one Shorty Jones. The allegation is
that the engine operated by plaintiff ran in-
to the engine operated by Jones, and the
charge is that Jones negligently allowed his
engine to stand on a switch leading off from
the track upon which plaintiff was operating
his engine and so near thereto as to cause
the collision. The counts are framed, of
course, under the fifth subdivision of the
Employers' Liability Act (section 3910 of
the Code); said subdivision providing for
the liability of the employer when the em-
ployé's injury is caused by reason of the neg-
ligence of any person in the service or em-
ployment of the employer who has charge
or control of any locomotive or engine upon a
railway.

Without contradiction or adverse infer-
ence, except as otherwise noted, the evidence
showed the following facts: Plaintiff and
Jones were both employed to operate dinkey
engines in the yard adjacent to defendant's
open-hearth steel furnaces. A main line ran
east and west through the center, approxi-
mately, of the yard. To the north, and
along by the furnaces, a parallel track, called
the "open-hearth track," ran. A switch
track connected the main line with the open-

hearth track. At a point opposite the west
end of the furnaces, which stood in an east
and west line, another switch track connect-
ed the main line with a track called No. 3,
which was located to the south of the main
line. Jones' business with his engine was to
bring cars, laden with materials for the fur-
naces, over the main line from the "field,"
which lay to the west, up to the yard, and to
take empty cars back from the yard to the
field. Plaintiff's business with his engine
was to shift loaded cars from the yard to
which they had been delivered by Jones over
to the open-hearth track, from which their
contents were fed to the furnaces, and to re-
turn empties to the yard whence they were
taken by Jones to the field. When not busy,
the place for Jones' engine was at a point
on the main line known as "the spot." The
spot was just at or immediately adjacent to
the point at which track No. 3 branched off
from the main line. A short time before the
accident in which plaintiff received his in-
juries, he had moved some empty cars, five
or six, from the open-hearth track over to
the main line and from the main line had
"kicked" them over to track No. 3. These
cars stopped or were stopped so near the
main line that an engine attached to them
would not stand clear of the main line. A
few minutes before the accident, plaintiff's
engine was standing on the main line near
"the spot"; Jones' engine was on the main line
about 50 yards to the west. Plaintiff testi-
fied that he saw Jones' engine while they
were thus standing. Then plaintiff moved
toward the east and coupled his engine to
five or six loaded cars waiting there for
transfer to the open-hearth track. Jones
followed to the switch and coupled his engine
to the empty cars on track No. 3. Thus his
engine stood partly on No. 3 and partly on
the main line, or it stood with its wheels on
No. 3, its cab over the main line. For all
practical purposes it stood on "the spot."
It waited there while two employés of the
defendant with long-handled hoes scraped
débris off the cars. These engines were
small, four-wheeled engines; they had no
tenders. The cars too were small; on each
car were three pans into which materials
for the furnaces were loaded. After the
cars had discharged their materials, the
pans were lifted by a magnet, attached to
an overhead movable crane, so that the sur-
faces beneath might be cleaned. While this
was being done, defendant's yard foreman,
in the usual way of such operations, except
that at first he took no notice of the position
of Jones' engine, gave an order to plaintiff's
switchman to move the cars to which his
engine was coupled. The switchman—also
in the usual way—communicated the order
to plaintiff, and plaintiff, to get his cars in
a position from which they could be switch-

ed over to the open-hearth track, backed his engine toward the point where Jones' engine was standing. The foreman, noticing then the position of Jones' engine, signaled an order that plaintiff's engine and cars stop; but he could not see plaintiff, and plaintiff denied any knowledge of the order.

In the collision which followed, a steam pipe on the side of Jones' engine was broken by the impact, and plaintiff, who became jammed and fastened between the side of the cab and the reverse lever of his engine, was scalded. This happened between 10 and 11 o'clock at night. The night was dark; it was raining; and according to some of the testimony smoke was blowing across the yard, but as to the smoke there was a conflict. There were quite a number of lights of one kind or another about the yard, and there can be no reason to doubt that the yard foreman and Jones and his switchman saw that the movement of plaintiff's engine would result in a collision; it may be necessary, however, to accept plaintiff's testimony as establishing a conflict on the point whether he could see Jones' engine on or over the main line track. Plaintiff's engine backed to the place of collision, and his proper seat in the cab placed his back in the direction of the movement; but he paltered on the question whether he looked back or forward, and upon that issue also it seems necessary to proceed upon the hypothesis of a conflict in the evidence.

It is insisted that the evidence contained no warrant for an inference of the negligence charged in the counts submitted to the jury, and that as against these counts defendant was entitled to the general affirmative charge, duly requested. Jones was certainly not negligent in placing his engine where it was, for that was done in the usual and necessary course of the business for which he was employed. Plaintiff cannot complain that Jones displayed no lights on his engine, for no lights were furnished to him or his engine, nor was it the practice to carry lights on these yard engines, nor it seems, was it necessary in view of the other lights that illuminated the scene. Nor can plaintiff complain of Jones that he allowed his engine to remain stationary for a few moments at the place of the collision, for Jones was where he had a right to be in the discharge of his duties to his employer, his engine for every practical purpose stood where it was due to stand when not moving about the yard, he was under no greater duty to look out for plaintiff than was plaintiff to look out for him, and, in common with their common employer, he had a right to act upon the assumption that plaintiff would take that care for his own safety, would exercise that measure of intelligence and diligence, which would prevent an accident of the sort which resulted in his injury. Woodward Iron Co. v. Marbut, 183 Ala. 310, 62 South. 804; Sloss-

Sheffield Co. v. Reid, 191 Ala. 628, 68 South. 136. Appellee quotes from K. C., M. & B. R. R. Co. v. Burton, 97 Ala. 240, 248, 12 South. 88, 92, as follows:

"So, if one have charge or control of a car only for the purpose of bringing it to rest on a track and he places it in a dangerous position thereon, and in consequence of its being there an injury afterwards results, this is actionable negligence within subsection 5. Such person must not only exercise due care in moving the car, but he is also under a duty to see that it is not placed and left in a dangerous position. Gibbs v. Great Western Ry. Co., 12 L. R. (Q. B.) 208."

At another point in the same opinion the court said:

"The placing of a car on a spur or side track and leaving it to stand thereon so near to another track as to endanger the persons of employés while in the performance of their duties in the usual and ordinary way upon trains passing along that other track is negligence, unless there is some justifying necessity in the particular instance for such conduct."

The language of these cases is to be considered in connection with the facts to which it had reference. In the Gibbs Case (12 L. R., Q. B., 208):

"The person who did the mischief was a man called Fisher, and the way he did the mischief was this: It being his duty to oil from time to time certain machinery contained in a box which was connected with the points, he took off the cover of the box, and having laid it on the permanent way of the railway, he left it there forgetting that he had done so, and the consequence was that a train came by, was knocked off the line, and the engine driver whom the plaintiffs represent was killed."

In the Burton Case it is to be inferred that plaintiff's coemployé in charge of an engine, while shifting cars about defendant's yard, placed, and left standing, a car upon a spur track so near to the "lead track" that "some hours afterwards the plaintiff was passing the point on a train, where his duty required him to be, with his person protruding or extending beyond the outer surface of the car on which he was at the time, his back or side being turned in the direction he was going, and was struck by or came against the stationary car, and was knocked off and injured."

Plaintiff here fell into no such trap. It was his duty to keep a lookout for Jones' engine, this we say, not because of the evidence which went to show that Jones had the right of way—for it may be conceded that plaintiff's testimony put that matter in conflict—but because, indisputably, the duty of plaintiff and Jones was to co-ordinate their efforts to a common end; they had no one else to look out for; Jones' duty took him back and forth without schedule over the track upon which the collision occurred;

when not busy, his engine was due to stand upon that track and very near to, if not precisely upon, the spot where it occurred; and his engine stood, not dubiously near the lead track, but so over and upon it that it was obvious to a glance that plaintiff's engine could not pass, thereby charging plaintiff, not only with the general duty of keeping a lookout, but with the specific duty of keeping a lookout for Jones' engine at that point. Jones had the right to rely upon plaintiff's discharge of his duty, and, by stopping for a few moments for the purpose noted, was himself guilty of no lack of due care. Hence our conclusion that the allegation of the counts in question was not proved, and that, as to them, defendant was entitled to the general charge. Whether defendant's yard foreman was negligent in giving his order under the circumstances, or whether defendant was entitled to the general ·charge on the ground that plaintiff appeared without dispute to have been guilty of contributory negligence, are questions which need not be answered on this record.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.