(87 South. 580)

**GULF STATES STEEL CO. v. CARPENTER.**

(7 Div. 80.)

(Supreme Court of Alabama. Dec. 2, 1920. Rehearing Denied Jan. 6, 1921.)

**1. Pleading** ☞34(4)—**Pleadings must be construed most strongly against pleader, but language must be given reasonable construction.**

While pleadings are to be construed most strongly against the pleader, the language used must be given a reasonable construction.

**2. Master and servant** ☞259(7)—**Complaint under statute for injuries to engineer held sufficient.**

In action for injuries sustained by a locomotive engineer in a collision with another locomotive placed on a switch track but not clearing the main line, counts based upon the Employers' Liability Act, alleging that the injuries were proximately caused by the negligence of one in charge of the locomotive, *held* not subject to demurrer.

**3. Master and servant** ☞259(5)—**Complaint under statute for injury to locomotive engineer by negligence of foreman held sufficient.**

In a locomotive engineer's action for personal injuries sustained in collision with defendant's locomotive placed on a switch track too near to the main line, a count resting on Employers' Liability Act, subd. 2, alleging negligent orders by foreman, *held* sufficient.

**4. Pleading** ☞216(3)—**Under statute no objection can be taken or allowed not distinctly stated in demurrer.**

While the sufficiency of a count must be tested by its weakest alternative averment, yet under Code 1907, § 6340, no objection can be taken or allowed which is not distinctly stated in the demurrer.

**5. Master and servant** ☞264(4)—**Evidence as to locomotive's headlight held admissible.**

In a locomotive engineer's action for personal injuries sustained in a collision with another locomotive placed on a side track but too close to the main line, where a count alleged that the locomotive was left in that position without a headlight, it was not reversible error to overrule an objection to a question whether plaintiff could have seen the other locomotive sooner if the engine had been equipped with headlights.

**6. Damages** ☞216(1)—**Instruction held not objectionable as leaving recovery to whim of jury.**

In a locomotive engineer's action for personal injuries sustained in a collision with another locomotive, an instruction as to damages *held* not objectionable as leaving the amount of recovery to the mere whim of the jury, without reference to plaintiff's injuries, or a reasonable compensation therefor.

**7. Appeal and error** ☞1040(11)—**Erroneous overruling of demurrer to unnecessary count held harmless.**

Where a count in a complaint is unnecessary to the cause of action and is subject to demurrer, reversal cannot be rested on the overruling of the demurrer thereto; such error being harmless.

Sayre, J., dissenting.

Appeal from Circuit Court, Etowah County; O. A. Steel, Judge.

Action by Charles F. Carpenter against the Gulf States Steel Company for damages for injuries suffered while in its employment. Judgment for plaintiff, and defendant appeals. Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The following excerpts from the oral charge were excepted to:

"If you should find that Shorty Jones was negligent in placing the engine where it was and that that proximately contributed to the injuries received by Carpenter, then the plaintiff would have made out count 3, and would be entitled to a verdict."

Also:

"The law calls on a superintendent to exercise reasonable caution and prudence in directing the employees as to their work and doing so it is necessary that the superintendent should take into consideration the conditions surrounding the man, or in this case the conditions surrounding Carpenter; the dangers incident to the work; the dangers incident to the place of employment—he must have those things in mind when giving orders."

Also:

"When he gave Carpenter that order, Carpenter had a right to assume that the way was clear for him to make the delivery of that train of material to the point to which he was directed to carry it."

Also:

"He had a right to presume McCartney was exercising reasonable care and caution for his safety when he gave that order. If McCartney did not do it, if he gave the order under circumstances and conditions that a reasonably prudent man would not have given that order, then measured by the rule of reasonable prudence it was a negligent order."

Also the following:

"Then if you should conclude further that he was permanently injured, then you may add to the other items such sum as you think he ought to have for the permanent injury he has received, if he received any, in no case more than $5,000."

Hood & Murphree, of Gadsden, for appellant.

Demurrers to counts 3 and 5 should have been sustained. 110 Ala. 185, 20 South. 325; 111 Ala. 275, 19 South. 1001. Demurrers to counts 9 and 11 should have been sustained. 156 Ala. 253, 47 South. 248; 168 Ala. 612, 53 South. 76; 1 Ala. App. 370, 56 South. 253; 146 Ala. 259, 40 South. 971; 149 Ala. 473, 43 South. 110; 134 Ala. 293, 32 South. 700; 137 Ala. 234, 34 South. 20. Whether the engines could have been seen if equipped with headlights was immaterial. 203 Ala. 331, 83 South. 55. Court was in error in its oral instruction. 199 Ala. 177, 74 South. 246; 192 Ala. 651, 68 South. 1008; 103 Ala. 142, 15 South. 515. The rule laid down for the assessment of damages was error. 195 Ala. 382, 70 South. 655, Ann. Cas. 1917E, 292; 9 Ala. App. 519, 64 South. 175.

P. E. Culli and Victor Vance, both of Gadsden, for appellee.

There is no error in overruling demurrers to complaint. Subdivision 5, § 2910, Code

1907; 164 Ala. 331, 50 South. 1015; 137 Ala. 601, 34 South. 1020; 137 Ala. 234, 34 South. 20; 156 Ala. 253, 47 South. 248; 146 Ala. 259, 40 South. 971; 144 Ala. 157, 39 South. 898; 137 Ala. 241, 34 South. 20.

GARDNER, J. The first trial of this cause was had upon counts 3, 4, and 5. Upon appeal to this court the judgment recovered by the plaintiff was reversed (Gulf States Steel Co. v. Carpenter, 203 Ala. 331, 83 South. 55), and the second trial was had upon counts 3 and 5, with added counts 9 and 11, the plea of general issue thereon, and pleas of contributory negligence—again resulting in a verdict for the plaintiff, from which the defendant prosecutes this appeal.

Counts 3 and 5 rested upon the fifth subdivision of the Employers' Liability Act (Code 1907, § 3910), which provides for liability of employer when the injury is caused by reason of the negligence of any person in the service or employment of the master or employer who has charge or control of any signal points, locomotive, engine, or train upon a railway. Count 3, after setting up that the plaintiff was in the service and employment of the defendant at the time he received his injury, and in the discharge of his duties as an engineer upon a locomotive on said defendant's railroad track, alleged that plaintiff's engine collided with another engine on a railway track leading off from the track on which plaintiff was operating his engine, and as a consequence plaintiff suffered the injuries enumerated. The count then concludes:

"Plaintiff avers that said injuries and damages were proximately caused by reason of the negligence of one Shorty Jones, a person in the employment of the defendant, who had charge of the locomotive or engine upon a railway, in that, the said Shorty Jones negligently allowed said engine or locomotive to stand on the switch or track leading off from the railway on which plaintiff was running or backing said locomotive too near to the track on which plaintiff was so running or backing said locomotive as to cause said collision."

Count 5 was substantially the same as count 3, with the added averment that the locomotive left standing too near the track on which plaintiff was operating his engine was so left without a headlight, or any notice to the plaintiff that the engine was within striking distance of plaintiff's engine, and the further difference that the name of Will Musket was substituted for that of Shorty Jones.

[1, 2] We are of the opinion that the argument against the sufficiency of these counts is without merit. While pleadings are to be construed most strongly against the pleader, yet this court has repeatedly held that the language used must be given reasonable construction, and in the light of this rule it will appear that these counts meet all requirements of good pleading, and were not subject

to the demurrer interposed. A. G. S. R. R. Co. v. Finn, 199 Ala. 177, 74 South. 246; M. & O. R. R. Co. v. George, 94 Ala. 199, 10 South. 145; Republic Iron & Steel Co. v. Williams, 168 Ala. 612, 53 South. 76. We find nothing in the case of L. & N. R. R. Co. v. Bouldin, 110 Ala. 185, 20 South. 325, to the contrary of this conclusion; nor do we think anything appearing in Brown, Adm'r, v. L. & N. R. R. Co., 111 Ala. 275, 19 South. 1001, at all tends to disclose any insufficiency in count 5 as contended by counsel.

[3] Count 9 is rested upon subdivision 2 of the Employers' Liability Act, and we are of the opinion that the concluding paragraph of this count need but to be quoted to demonstrate its sufficiency:

"Plaintiff avers that said damages and injuries proximately resulted from the negligence of J. R. McCartney, a person in the service or employment of the defendant, and who had superintendence intrusted to him, whilst in the exercise of such superintendence, in this, that said J. R. McCartney as such superintendent knowing that another locomotive was standing so near the track on which plaintiff was operating his locomotive or engine that if the plaintiff tried to pass the point where such locomotive was standing that a collision would necessarily follow he the said J. R. McCartney negligently ordered or directed the plaintiff with his crew to carry, to wit, five loaded cars down the track on which plaintiff was so operating his engine or locomotive and place them on some other track which would necessarily require the plaintiff to pass the point where such other locomotive was standing, without notice or warning of the dangerous proximity of such other locomotive, and that plaintiff in carrying out said orders or directions collided with said locomotive and thereby was injured."

Count 11 was based upon subdivision 3 of the Employers' Liability Act, the negligent order being charged to the said J. R. McCartney as in count 9. This count did not charge that the said McCartney negligently gave an order, but alleged that at the time he gave the order he "knew, or ought to have known, that at the time said orders were given to the plaintiff it would be necessary for plaintiff to pass the point," etc.

[4] The most strenuous insistence of counsel for appellant as to the insufficiency of this count relates to the foregoing language, wherein it is charged in the alternative that the said McCartney "knew or ought to have known," and reliance is had upon the holding of this court in Alabama Co. v. Hammond, 156 Ala. 253, 47 South. 248, and Republic Iron & Steel Co. v. Williams, supra. Should it be conceded for the purposes of this case only that the count was subject to demurrer under these authorities, yet we are of the opinion that this defect was not sufficiently pointed out by the assignments of demurrer which are found on page 14 of the record. While it is true that in law of pleading the sufficiency of a count must be tested by its

weakest alternative averment, yet, under the provisions of our statute (section 6340, Code 1907), no objection can be taken or allowed which is not distinctly stated in the demurrer, this for the obvious reason that the pleader as well as the court might be informed as to the specific objection so it may be met by amendment if so desired.

The grounds of demurrer assigned to this count are five in number, and have been very carefully examined in consultation, and we are of the opinion that none of these assignments come within the rule, and that therefore the court cannot be put in error for overruling the demurrer thereto.

Moreover, for reasons hereinafter to be stated, even should it have been otherwise, we do not think a reversal of the cause could have been rested upon the action of the court in overruling the demurrer to this count.

Plaintiff was employed by the defendant to operate one of its dinkey engines in the yard adjacent to the defendant's open-hearth steel furnace. One Shorty Jones was employed in the operation of another dinkey engine in these yards. It appears that plaintiff's engine was to be operated on the tracks of the "open hearth yard," which was elevated some feet above the ground. For a better understanding of the situation we can do no better than to quote extracts from the statement of facts in the opinion on former appeal, as follows:

"Plaintiff and Jones were both employed to operate dinkey engines in the yard adjacent to defendant's open-hearth steel furnaces. A main line ran east and west through the center, approximately, of the yard. To the north, and along by the furnaces, a parallel track, called the 'open-hearth track,' ran. A switch track connected the main line with the open-hearth track. At a point opposite the west end of the furnaces, which stood in an east and west line, another switch track connected the main line with a track called No. 3, which was located to the south of the main line. Jones' business with his engine was to bring cars, laden with materials for the furnaces, over the main line from the 'field,' which lay to the west, up to the yard, and to take empty cars back from the yard to the field. Plaintiff's business with his engine was to shift loaded cars from the yard to which they had been delivered by Jones over to the 'open-hearth track, from which their contents were fed to the furnaces, and to return empties to the yard whence they were taken by Jones to the field. When not busy, the place for Jones' engine was at a point on the main line known as 'the spot.' * * * A short time before the accident in which plaintiff received his injuries, he had moved some empty cars, five or six, from the open-hearth track over to the main line and from the main line had 'kicked' them over to track No. 3. These cars stopped or were stopped so near the main line that an engine attached to them would not stand clear of the main line."

A few minutes before the accident plaintiff's engine was standing on the main line at the

coal chute, and Jones' engine was standing at the "spot," which was 50 yards to the west and down the incline. Plaintiff in obedience to orders then moved his engine east for the purpose of coupling five loaded cars to be transferred to the open-hearth track. At the time plaintiff left with his engine for the purposes above stated, Jones brought his engine to the switch and coupled it to the empty cars on track No. 3, and thus his engine stood partly on No. 3 and partly on the main line. Plaintiff, after coupling the five loaded cars, moved his engine west, in obedience to orders, for the purpose of transferring them to the open-hearth track. To accomplish this purpose it was necessary that the engine move beyond the point at which Jones' engine was located, partly on the main line and partly on track No. 3. Plaintiff's testimony tends to show that he was keeping a lookout, as best he could, in the operation of his engine; that it was a very dark night, raining hard, and that there were not sufficient lights in that part of the yard where Jones' engine stood for him to see and discern any obstruction upon the track until so close to Jones' engine as to be unable to avoid collision. He further testified that the wind was blowing, and smoke from the gashouse also tended to obstruct the view.

Jones testified that he knew that plaintiff had moved east with his engine, and saw plaintiff's engine up there—not noting the exact location, but knew it was there on track No. 1—that he knew his engine was not in the clear, and that if his engine had been moved further on, some three, four, or six feet, it would have cleared track No. 1, but he made no attempt to push the cars farther in on track No. 3. To quote from the record:

"If witness' switchman had given the signal, he could easily have moved the empty cars farther on No. 3 track."

Will Musket was the switchman for Jones, and by his signals Jones' engine was moved. Musket also testified that he saw plaintiff's engine go east on No. 3 track, and that he gave the signal for Jones to go ahead and threw the switch for Jones to go on No. 3 track; that Jones' engine headed in on No. 3, but the entire back of the engine extended over on No. 1, and as soon as he coupled Jones' engine to the empty cars he went over and stood under the shed while two negroes, Johnson and Jennings, cleaned the cars. He knew that Jones' engine was not in the clear, and went over and stood under the shed to get out of the rain. To quote again:

"He knew that plaintiff's engine was eastward on No. 1 track, and for his engine to go into the furnace track it was necessary for him to back past the switch connecting Nos. 1 and 3 track."

J. R. McCartney also testified that he was foreman of the open-hearth furnaces; that he had entire charge of the working crew on the elevated platform, and materials were moved by these two engines on his orders; that he saw plaintiff's engine before it came to the point where he was standing at the time of the collision; that he saw Jones' engine at the time he moved eastward on track No. 1. When plaintiff got the loaded cars his switchman coupled onto them and uncoupled five of them from the string of cars. He saw the plaintiff when he left the scalehouse. At that time he was running his engine eastward on track No. 1 to get the loaded cars. Jones' engine extended over No. 1 track about four feet. Jones did not operate on schedule. Jones' engine operated over the general yards, bringing loaded cars from the general yard up No. 1 track to the elevated platform, and after getting them on that platform plaintiff turned them loose. That when Jones was waiting for the plaintiff to get out of the way or waiting for work, his engine stood at the place called the "spot," down on the incline of track No. 1, which was 50 yards west down the incline from the coal chute or the west end of the elevated platform. That he gave the orders to plaintiff's switchman to go on No. 1 track and get the loaded cars, and plaintiff was working by the signals of his switchman. At the time he gave that order Jones' engine, under order of witness, was coming in to get the empty cars, and witness told plaintiff's switchman to get five loaded cars and put the loaded cars on the furnace track. After giving this order it was four or five minutes before Jones came up after the loaded cars, and it took plaintiff six or eight minutes after witness gave the orders to get up and get the loaded cars. Jones' engine had been coupled to the empty cars six or seven minutes from the time plaintiff's engine was coupled to the loaded cars. Witness was near by and told plaintiff's switchman where to detach the loaded cars from the string of cars. At that time he knew that Jones' engine was coupled to the empty cars and knew it did not clear No. 1 track. It would take plaintiff's engine something like a minute and a half to back with the loaded cars down to where Jones' engine was, and in order for the plaintiff to take the loaded cars onto the furnace track it was necessary for him to go beyond where Jones' engine stood. "It was necessary for plaintiff, in placing the loaded cars on the furnace track, to back beyond the point where Jones' engine stood, which engine stood mostly on No. 3 track, probably all of its wheels were on that track, and something like four feet of it was hanging over." This witness further stated that after plaintiff had backed his engine about fifty feet he (witness) commenced to try to stop him, and signaled him; and that plaintiff's switchman as well as the negroes who were cleaning the empty cars hallooed: "Stop! Look out!" Witness had no lantern.

Plaintiff insists that he neither saw nor heard any stop signals. It was without dispute that the engines were being operated without headlights.

Upon former appeal it was held by this court that the defendant was entitled to the affirmative charge upon counts 3 and 5, and this conclusion was largely, if not entirely, reached upon the interpretation of the record as then presented to the effect that at the time of the collision Jones' engine stood. for all practical purposes on the "spot."

Appellee's counsel concedes that the record upon the former appeal was insufficient and not clear as to the dimensions and locations, and takes no issue as to the correctness of the former holding upon the record as then presented.

There is therefore no occasion for a comparison of the records, and it is wholly unnecessary in the light of this concession. There is now presented a very clear diagram of the situation, with the dimensions properly shown, which diagram, it is agreed, correctly portrays the location. Suffice it to say, therefore, that under the undisputed proof as now presented, Jones' engine was not at the "spot," either actually or for practical purposes, but had been moved 150 feet from the "spot," up the incline to the open-hearth track, and headed in upon track No. 3, with the rear end of the engine overhanging on No. 1 track, on which plaintiff's engine was then being operated. The dimensions of the open-hearth yard upon which plaintiff was operating his engine were 50 or 60 feet wide by 200 or 300 feet long, and when the plaintiff left with his engine to go east on track No. 1, Jones' engine stood at the "spot" which was 150 feet down the incline; and therefore the proof as now presented clearly shows that the plaintiff is not to be held to have expected Jones' engine to be standing on track No. 3, with part of it overhanging on track No. 1 within a few minutes after he moved eastward for his loaded cars. We have therefore presented upon this appeal quite a different situation as disclosed in the former opinion in this cause.

[5] As previously stated, the evidence is without dispute that these engines were not equipped with headlights. There was evidence for the defendant, however, tending to show the plaintiff could have seen Jones' engine upon the track, and that he was negligent in not keeping a proper lookout. The plaintiff's evidence was to the contrary, and left the question of contributory negligence for the consideration of the jury. He insisted that it was very dark, raining hard, much smoke, and very little light in that part of the yard. He was asked by his counsel if the engine had been equipped with headlights, could he have seen this engine sooner. It was without dispute that the engine was headed in on track No. 3, and the plaintiff was backing his engine toward it. The answer to such a question was but an obvious truth, and while it may be said to be in a sense but a conclusion of the witness, yet the overruling of the objection to the question did not constitute reversible error. It is true there is nothing in the record showing that any of the parties were under a duty to equip these engines with headlights, but count 5 alleged, as a part of the negligence complained of, that the engine was left in that dangerous position without a headlight or other notice to the plaintiff. The question of headlight therefore was legal, relevant, and competent under said count; and the grounds that the question called for illegal, irrelevant, and incompetent testimony are the only objections assigned. There is here no reversible error shown.

Plaintiff reserved exceptions to a portion of the oral charge of the court in reference to the negligence, if any was found, on the part of Shorty Jones in placing the engine where it was. If the objection to this part of the charge is based upon the theory that it omits reference to the plaintiff's contributory negligence, it is clearly without merit, for just preceding and as a part of the same sentence the court had definitely and clearly charged the jury that, notwithstanding they may find negligence on the part of Jones, yet if plaintiff's negligence contributed to his injury plaintiff could not recover.

[6] There was also an objection to that part of the oral charge dealing with the question of damages to be recovered, and appellant's counsel insist that this portion of the charge is to be construed as leaving the amount of recovery to the mere whims or arbitrary views of the jury without reference to the extent of appellant's injury, or what would reasonably compensate him for his injuries. We have read this portion of the charge with the other parts of the court's instruction along this line, and do not find that it is subject to this objection.

Exceptions were also reserved to that part of the oral charge of the court dealing with the negligence on the part of the superintendent, McCartney. However, we do not find it necessary to specifically deal with these exceptions, for the reason that upon careful examination of the evidence in this case we are persuaded that count 9, which rested for recovery upon the negligence of McCartney as superintendent, was made out without any conflict in the evidence, and that therefore the court would have been authorized to have charged the jury to that effect, leaving to the consideration of the jury, of course, the question of contributory negligence on the part of plaintiff, which was a disputed issue, as previously noted.

We need not again review the evidence of McCartney further than in a general way to call attention to the fact that he admits he knew Jones' engine was overhanging track No. 1 at the time he gave the order, and that

in order for the plaintiff to place the loaded cars on the furnace track, as directed, it would be necessary to pass the point where Jones' engine was located. That there was no element of a "justifying necessity" for this obstruction upon the track is without dispute, and, as said by this court in K. M. & B. R. R. Co. v. Burton, 97 Ala. 240, 12 South. 88:

"The placing of a car on a spur or side track, and leaving it to stand thereon so near to an-other track as to endanger the persons or em-ployees while in the performance of their du-ties in the usual and ordinary way upon trains passing along that other track, is negligence un-less there is some justifying necessity in the particular instance for such conduct."

And, again,

"If one has superintendence of the tracks and cars in the yards of a railroad and either directs or allows a car to be placed too near another track or, it being there without fault, suffers it to remain, this is negligence whilst in the exercise of such superintendence within the statute. * * * On the facts stated, the defendant was under a duty to the plaintiff to keep its tracks on which plaintiff had to per-form his duties, free from obstruction which would imperil his person while so engaged, and, it not appearing that plaintiff had anything to do with the placing of the car, he had a right to assume that the way was not dangerously obstructed."

Other appropriate quotations from the Bur-ton Case might be made, but the foregoing will suffice to demonstrate that the undisput-ed evidence brings this case as to count 9 clearly within the influence of that authority. Indeed, it may be that under the facts this might also be said of counts 3 and 5, but this is unnecessary to determine.

[7] While count 11 was rested upon sub-division 3 of the Employers' Liability Act, yet the negligence alleged was that of J. R. McCartney, the superintendent, referred to in count 9, and it appears that count 11 must have been added by the pleader as an extra precaution. The evidence being without dis-pute that McCartney was the superintendent, this count was entirely unnecessary and might well have been withdrawn. We have previously stated that, even should it be con-ceded that this latter count was subject to demurrer interposed, yet reversal could not be rested upon the overruling of the demurrer thereto, and this under the authority of So. Bell Tel. Co. v. McTyer, 137 Ala. 602, 34 South. 1020, 97 Am. St. Rep. 62—the hold-ing of which was that, under such circum-stances, if error, it was without injury. This holding is with special force applicable to the instant case, where the facts to be relied upon in the establishment of the two counts are identical, and where count 9 which is en-tirely sufficient was made out on the undis-puted proof.

Some of the argument of counsel for appel-lant appears to assume that the proof is clear to the effect that plaintiff was backing his en-gine in the face of obvious danger, and au-thorities are cited upon such assumption. However, as to whether or not it was an ob-vious danger was a question in sharp dispute, and under all the evidence left for the deter-mination of the jury the question of contribu-tory negligence on defendant's part.

We find no reversible error in the record, and the judgment appealed from will, ac-cordingly, be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN, SOMERVILLE, THOMAS, and BROWN, JJ., concur.

SAYRE, J., dissents.