# Woodward Iron Co. *v.* Marbut.

### *Injury to Servant.*

(Decided May 15, 1913. Rehearing denied June 19, 1913.
62 South. 804.)

1. *Master and Servant; Injury to Servant; Complaint.*—A complaint brought under an Employer's Liability Act should conform to the general rules of pleading in matters of certainty.

2. *Same.*—A complaint brought under the Employer's Liability Act, which merely alleges the injury and that it was caused by the negligence of the superintendent of the master is not sufficient, although it follows the language of subdivision 2, section 3910, Code 1907; the field of superintendence is a wide one, covering generally the master's business, and the mere allegation of the negligence of the suprintendent does not give the master sufficient notice as to the matters charged.

3. *Same; Duty of Master.*—A servant is expected to exercise some degree of intelligence, and the instinct of self-preservation, and is held to assume all injuries connected with his employment against which he may protect himself by the exercise of ordinary care.

4. *Same; Evidence; Sufficiency.*—The evidence examined, and held insufficient to charge the master with negligence, either in superintendence or in furnishing defective appliances.

5. *Pleading; Conclusions.*—While conclusions may be pleaded, ordinarily they must be accompanied by averments of facts whereon issues can be understood and tried.

6. *Same; Certainty.*—Certainty to a common intent in pleading is essential to the due administration of justice, the adverse party being entitled to notice of the cause he must be prepared to meet.

7. *Appeal and Error; Harmless Error; Pleading.*—Where a cause is submitted to the jury on two counts, one alleging defective appliances, and the other the negligence of the superintendent of the master, the overruling of a demurrer to the count insufficiently alleging negli-

[Woodward Iron Co. v. Marbut.]

gence of the superintendent, cannot be held harmless where there was a verdict for plaintiff, as there was nothing to show that the issues raised by the improper count where in any way eliminated.

(McClellan, J., dissents.)

APPEAL from Bessemer City Court.

Heard before Hon. J. C. B. GWIN.

Action by W. A. Marbut against the Woodward Iron Company for damages for injury sustained while in its employment. Judgment for plaintiff and defendant appeals. Reversed and remanded.

CABANISS & BOWIE, for appellant. The complaint in so far as the count based on the negligence of the superintendent is concerned was insufficient, and demurrers should have been sustained thereto.—*Maddox v. Chilton W. & M. Co.,* 171 Ala. 216; *Whitmore v. Ala. C. & I. Co.,* 164 Ala. 125; *Whatley v. Zenida C. Co.,* 122 Ala. 118; *T. C. & I. Co. v. Smith,* 55 South. 170. The oral charge of the court was improper.—*Maddox v. Chilton W. & M. Co., supra.*

STALLINGS & DRENNEN, for appellee. The count criticised is sufficient.—*A. G. S. v. Davis,* 119 Ala. 572; *Bear Creek M. Co. v. Parker,* 134 Ala. 293, and authorities cited.—*So. C. & F. Co. v. Bartlett,* 137 Ala. 234; *Bessemer L. & I. Co. v. Campbell,* 121 Ala. 57; *L. & N. v. Butler,* 55 South. 262. The case went to the jury on two counts, one of which was sufficient, and any error in overruling the demurrers was clearly without injury.

SAYRE, J.—This suit was brought under subsection 2 of the Employers' Liability Act (section 3910 of the Code). Count 4 alleged the relation between the parties out of which a duty arose, the nature and extent of plaintiff's injury, and that it was caused by "a certain-

piece or particle of steel that flew with great force and violence from a cleaver when struck by a sledge hammer at the shops of defendant." It then concludes: "Plaintiff avers that his said injury and damage were caused by reason and as a proximate consequence of the negligence of a person in the service and employment of defendant, and intrusted by it with superintendence whilst in the exercise of such superintendence, to wit: Tom Cosper."

In our most recent case of the sort we held in respect to a similar count that, though it followed the language of the statute, it was subject to demurrer, because it failed to point out, even in general terms, any act of negligence on the part of the alleged superintendent with respect to his duty while so engaged.—*Maddox v. Chilton Warehouse Co.*, 171 Ala. 216, 55 South. 93.

In *Bear Creek Mill Co. v. Parker*, 134 Ala. 293, 32 South. 700, the fifth count of the complaint there under consideration, after alleging preliminary matter about which there was no question, showed plaintiff's injuries, and that they resulted from plaintiff being caught between two cars of the defendant. The averment which needs to be noticed in this connection was as follows: "And plaintiff avers that his said injuries were caused by reason of the negligence of Bill Simmons, who was then and there in the service or employment of the defendant, and was then and there intrusted with the superintendence of the train hands and loaders on defendant's said cars and the coupling thereof, and that said injury occurred while the said Bill Simmons was in the exercise of such superintendence." It was held that the count was not demurrable for failing to aver the facts relied on to constitute negligence. It is not impossible to find sensible differences between the question there presented and the one at hand. There

the general, though loosely stated, effect of the aver-
ment was that defendant's superintendent was party to
and negligent about the very act of coupling the cars
between which palintiff was caught and hurt, whereas
here the particular negligence is not pointed out, and
defendant's superintendent may have been connected
with the manual act charged in any of the manifold
ways in which the master or his superintendent may
have care, oversight, or superintendence of the mas-
ter's business, and the demurrer in this case drew at-
tention to this consideration. These remarks apply to
the case of *Creola Lumber Co. v. Mills,* 149 Ala. 474, 42
South. 1019. But without dwelling on this point of dif-
ference between those cases and this, we will see to
what result general principles of pleading and the anal-
ogy of other adjudications lead.

The rule of this court has been that a complaint
under the Employers' Liability Act should, in respect
of certainty, conform to those rules which under our
system apply to pleadings generally. Those rules per-
mit the averment of conclusions, but conclusions when
employed must ordinarily be accompanied with aver-
ments of fact whereon issues can be understood, joined
and tried.—*L. & N. R. R. Co. v. Jones,* 130 Ala. 470, 30
South, 586, citing *Leach v. Bush,* 57 Ala. 145, upon
which have been planted all those numerous cases in
which great generality in the averment of negligence
has been accepted as meeting the requirements of good
pleading.

Certainty to a common intent in pleading is essential
to the due administration of justice, and it cannot be
abolished. By certainty causes and issues are identified
for the determination of jurisdiction, and thereby the
protection of parties against repeated trials of the same
case, the finality of elections of remedies, the comity of

courts, and other conserving principles of procedure are assured.—2 Hughes on Prop. 474. And, to come nearer to the needs of the instant case, certainty in some degree is required to give adversary parties reasonable notice of what they must be prepared to meet, and to speed the disposition of causes under their merits.— *T. C. I. Co. v. Smith,* 171 Ala. 251, 55 South. 170.

By the adjudicated cases it appears that breaches of the duty of superintendence may take many various forms. Superintendence may cover the entire field of the master's business. There may be negligence on the part of a superintendent in the adoption of an improper method of doing the work in hand; the giving of improper directions with respect to particular details of the work; failing to furnish proper appliances; employing incompetent servants; allowing abnormally dangerous conditions to exist in the place of work; failing to give instructions under circumstances which indicate the propriety of doing so; failing to warn a servant of abnormal danger; or violating rules promulgated by the master. See 2 Labatt Mas. & Ser. § 687, where many illustrative cases are collected. Under the complaint in this case plaintiff might have proved any or all of the above-mentioned varieties of negligence. But their enumeration demonstrates the reason and necessity of the rule which requires the statement of facts, whereon issues can be joined, understood, and tried, in connection with the conclusion alleged.

In all the complaints under the statute which have passed muster in this court, so far as we are informed, not excepting *Bear Creek Mill Co. v. Parker, supra,* there have appeared averments designed and calculated to give the defendant at least an inkling of the facts constituting the particular character of negligence the plaintiff would undertake to prove at the trial. Thus

in *A. G. S. R. R. Co. v. Davis,* 119 Ala. 572, 24 South. 862, much stressed by appellee, a count under the fifth subdivision of the act, which charged plaintiff's injuries to "the negligence of an engineer of defendant who then and there had charge or control of an engine of defendant" was held sufficient. But that, we take it, was because the averment informed the common understanding that the negligence occurred in the manual operation of the engine, and seems fair enough. So of other counts in the same case, framed under the first subdivision of the act, in which negligence was predicated upon the fact that there was "a defect in the track," though some members of the court were inclined to think too much indefiniteness and uncertainty characterized some of the counts.

In *Jackson Lumber Co. v. Cunningham,* 141 Ala. 206, 37 South. 445, a count under the first subdivision, averring that "the said railway from which the said engine was derailed at or near the point of derailment was defective," was held good, the court saying that the term "railway" was used in the pleading merely to designate that from which the engine was derailed, and must in such use be construed as synonymous with "track." But it has been held all along that counts under that subdivision of the statute must specify the defect in defendant's ways, works, machinery, or plant of which they complain.—*Whatley v. Zenida Coal Co.,* 122 Ala. 118, 26 South. 124; *Whitmore v. Ala. Consol. Co.,* 164 Ala. 125, 51 South. 397, 137 Am. St. Rep. 31; *T. C. I. Co. v. Smith, supra.*

In *Southern Car Co. v. Bartlett,* 137 Ala. 237, 34 South. 20, relied upon by appellee, the count under the second division of the statute stated precisely what the superintendent had done, and wherein his negligence consisted, while those counts which were sustained

under the third subdivision alleged the general tenor of the order given.

A considerable number of cases seem to fall indifferently under the second or third subdivision of section 3910, providing, respectively, for cases of negligence in the exercise of superintendence and cases in which the injured servant conforms to the orders or directions of another to whose orders or directions he is bound to conform. The two subdivisions are closely related, and decisions under one furnish a close analogy for cases under the other. In *Reiter-Connolly Co. v. Hamlin,* 144 Ala. 192, 40 South. 280, where a count under the third subdivision, alleging just what was done, and that it was done in obedience to particular instructions given by named agent of the defendant having authority in that behalf, was approved, the court, conforming its decision at once to the rule of *Leach v. Bush* and *L. & N. R. R. Co. v. Jones, supra,* said: The particular instructions given by Reiter are plainly stated, to wit, 'to slacken said chain.' This court has frequently held, in similar cases, that it is not necessary to aver in what particular or respect the orders or directions were negligent. The general averment that the orders 'were negligently given' covers the case."

We have had many cases on this subject. Without intending to depart from the clear rule of any of them, intending rather to follow them according to their true import, thereby following the clear rule of *Maddox v. Chilton Warehouse Co., supra,* we hold the fourth count of the complaint in the present case fatally defective on apt demurrer, for the reason that it gave defendant no notice, even of a general character, of what act of negligence on the part of its superintendent the complaining party would offer evidence.

It is no answer to the foregoing conclusion to say that
the case had been once tried, and thereby defendant suf-
ficiently informed, as appellee suggests.  That sugges-
tion would involve an impossible application of the doc-
trine of error without injury.  In the absence of other
pleading, stating substantialy the same facts, suggest-
ing and requiring the same evidence, or without some
showing that the issues raised by the objectionable
pleading have in some way been eliminated from the
case submitted to the jury, this doctrine has never been
allowed to cure error, in pleading, properly reserved;
and, in view of the uses of reasonable certainty in all
pleading, we apprehend it ought not to be allowed so
to operate as the result of judicial decision.  In this
case there is nothing to rebut the inference of injury,
and the judgment must be reversed for the error in over-
ruling the demurrer to the fourth count.

This case went to the jury on counts 1 and 4.  The
gist of count 4 has been stated, and for the further pur-
poses of this appeal it will be treated as having stat-
ed a cause of action under the superintendence clause
of the statute.  Count 1 proceeded under the first clause,
followed the language of that clause, and concluded
with the averment that "said cleaver was old, unfit, un-
safe, and defective."  By special instructions requested
defendant reserved for review his contention that the
evidence did not warrant a finding for plaintiff under
either of these counts.

The evidence tended to show that plaintiff and a fel-
low servant were engaged in repairing an oil box on a
slag car.  To do this it was necessary to cut off the head
of an iron or steel bolt.  Plaintiff held the cutting edge
of the cleaver against the bolt while his fellow was
striking its head or thick end with a sledge hammer.
Plaintiff held the cleaver by its handle, which was 2 or

2½ feet long.  The head of the cleaver had become bur-red by previous use; that is, the metal at its extremity had been mashed and caused to spread.  A stroke of the hammer caused a flake or particle or steel to fly from the head of the cleaver into plaintiff's eye, eventually destroying the organ.  There is in the evidence a sug-gestion of negligence on the part of plaintiff's fellow servant, the man with the hammer, but that does not appear to have been considered as of any consequence, as probably it was not, and will be put aside.  Cosper was foreman of the shop, and to him, if to any one men-tioned in the evidence, was intrusted the duty of seeing that defendant's ways, works, machinery, or plant there were in proper condition.  Conceding that the cleaver was a part of defendant's plant (*Sloss-Sheffield Co. v. Mobley*, 139 Ala. 425, 36 South. 181; *Going v. Ala. Steel & Wire Co.*, 141 Ala. 537, 37 South. 784; *Huyck v. Mc-Nerney*, 163 Ala. 244, 50 South. 926; *Riddle v. Bessemer Co.*, 170 Ala. 559, 54 South. 525), the questions for de-cision, then, are whether on the evidence the cleaver could have been found to be defective, and, if so, wheth-er Cosper was at fault in failing to see that it was not in proper condition.

Not the slightest reason appears in the evidence for suspecting the condition of the cleaver or its fitness for its designed use, when first brought into defendant's service less than a week before plaintiff was hurt.  But at the time of plaintiff's injury the cleaver was burred, and the only possible hypothesis suggestive of negli-gence on the part of defendant, for which it could be held responsible under the statute, was that this bur-ring was a condition which made the use of the cleaver dangerous.  Without dispute the testimony went to show that burring was an evidence of the tool's original fitness for the use to which it was being put, and that on

most reasonable grounds, if the testimony is to be credited. The edge of the tool is case-hardened, but the other end is left mild or soft, because mild steel, though it will burr, is tough, and to harden it would render it brittle and more liable to flake off under heavy blows, and thus cause accidents like that from which plaintiff suffered, and yet it must have some degree of hardness or it will not stand use. So it appears, slivers or particles of steel may fly however well the tool be prepared. And the testimony tends strongly to show that workmen pay no attention to the burr unless it needs to be trimmed so that the tool may be used in a close place. The tool is repaired from time to time by having its edge hardened and sharpened, but frequently it is used without knocking or dressing off the burr until its head is hammered down to the eye, when it is cast aside. However, since the bur is sometimes knocked, dressed, or trimmed off, possibly it was open to the jury to infer that this cleaver was at the moment unfit.

But, whatever may be the true state of the case in respect to the condition of the cleaver on the day when plaintiff took it for the operation upon which he was engaged and at the moment of his injury, there was no ground for a finding that it was defective in any respect except that it was burred. That, if a defect at all, was an obvious defect. Plaintiff was experienced in his line of work, and he neither averred nor proved that he needed any instruction in the use of the cleaver. He testified that he knew it was dangerous to use the cleaver with the burrs on it. He also testified that it was his duty, if the tool got out of repair, to take it to the blacksmith shop and have it repaired. All the mechanic's witnesses corroborated him as to that. True, he testified that the blacksmith never fixed the head of a cleaver while he was employed at defendant's shop, and that he

had complained to Cosper; but at no time did he say that he had taken the cleaver in question to the black-smith to be repaired, nor did he say that he had at any time requested the blacksmith to repair or dress the head of any cleaver, or complained of the particular tool as defective. True, also, defendant's blacksmith testified that the defendant company did not have any-body working for it to do that (meaning to dress the heads of cleavers), but the full and true meaning of this particular bit of testimony is clearly shown by his tes-timony elsewhere that in well-regulated shops in the Birmingham district they paid no attention to burrs on the head of a cleaver; that it was not customary to fix the heads of tools unless needed for use in a close place; that it was throwing away time to dress the head of a tool; but that "if a man brought a tool to us (meaning himself and his men, blacksmiths in defendant's shop) to dress the head, we will take it and heat it and cut those burrs off"—and more to the same effect.

The master is not required or expected to deal with his servant as with an automaton, as a person follow-ing a routine without intelligence. The servant may be expected to exercise some measure of intelligence and the instinct of self-preservation. It is a fair rule that 'a servant assumes the risk of all dangers, how-ever they may arise, against which he may protect him-self by the exercise of ordinary observation and care."—1 Labatt, Mas. & Ser. c. 4. In this case the servant was using a common tool of such sort that use inevit-ably produced and continually and rapidly added to the only defect the existence of which the evidence tended to prove. He was not put to the choice of using a defec-tive instrumentality or quitting his employment. His duty was, if he did not choose to follow the frequent practice of mechanics by knocking off the burrs with a

hammer, to take the cleaver to the blasksmith for re-
pair.   No rule of reason prevents the master or his su-
perintendent, or any other person in his service, and in-
trusted by him with the duty of seeing that the ways,
works, machinery, or plant are in proper condition,
from committing to the servant the duty of exercising
ordinary prudence for his own safety as against an ob-
vious danger which arises out of and grows with the
servant's use and manipulation of a simple tool, or re-
quires that the master shall undertake to do for the serv-
ant what the servant may do for himself to the better
advantage of both.   This we hold without intending to
question those previous decisions of this court in which
it has been held that unadapted and inadequate, though
more or less simple, instrumentalities constituted de-
fects in ways within the meaning of the statute.   Plain-
tiff's duty was, in a certain most just sense, to remedy
the defect complained of; that is, it was his duty to ob-
serve the defect when it appeared and take it to the
blacksmith for repair.   In this he failed according to
his own showing, and thereby he was derelict in a duty
which the principles of the common law imposed upon
him, and which the statute has not displaced.   The de-
fect in the cleaver, therefore, if it was defective, must
be laid to the remissness of the plaintiff rather than to
the negligence of defendant, his employer.   Construing
the testimony with all reasonable favor to appellee, he
was not entitled to a verdict on either count.

Reversed and remanded.

ANDERSON, MAYFIELD, SOMERVILLE, and DE GRAFFEN-
RIED, JJ., concur.   McCLELLAN, J., dissents as to the
ruling on count 4.   His views are expressed in *Cahaba
Coal Co. v. Elliott, infra,* 62 South. 808.   DOWDELL, C.
J., not sitting.