464

51 So.2d 894

**Ex parte INDUSTRIAL FINANCE &
THRIFT CORP.**

**3 Div. 577, 582.**

Supreme Court of Alabama.

Feb. 8, 1951.

Rehearing Denied April 26, 1951.

Walker Broach, Jr., of Meridian, Miss., and Fred S. Ball, Jr., of Montgomery, for petitioner.

Rushton, Stakely & Johnston, Jas. Garrett, Marion Rushton and Robt. B. Stewart, all of Montgomery, for respondent.

BROWN, Justice.

This is an original application by Industrial Finance & Thrift Corporation organized and existing under the laws of Louisiana wtih its principal office and place of business in the City of New Orleans, seeking mandamus to review an alleged erroneous decretal order of the Circuit Court of Montgomery County entered on July 20th, 1950, fixing the fee of the Special Master Paul Thomas for services rendered in the case of R. E. Seibels v. Industrial Finance & Thrift Corp., et al., terminated by final decree on June 7th, 1950. The directors of the named corporation, other than complainants, are and were nonresidents of this state. The basis of the decretal order fixing the compensation of Thomas was a provision in the agreement of settlement of the litigation in the Seibels' case. The order entered July 20.h, 1950, fixed the fee at $4,000 00 in addition to the sum of $500.00 deposited by the parties in the Seibels' case, consisting of $250.00 each, as required by the decretal order of the court appointing said Special Master, which petitioner alleges was made over its protest.

The factual background of this application, as appears from the allegations of the petition, in brief is: The bill filed by Seibels in the Circuit Court of Montgomery County July 13, 1948 was a minority stockholder's bill charging the directors other than Seibels and Taber with fraud and mismanagement of the Montgomery Company; that the dealings between the Montgomery Company and the petitioner here with whom it had interlocking directors had been unfair to the Montgomery Company. The bill in the main sought to hold the nonresident directors to account for the alleged fraud and mismanagement of the Montgomery Company and to hold petitioner to account for alleged excessive profits made by it in its dealings with the Montgomery Company through said interlocking directors.

The persons made defendants to the minority stockholder's bill answered, denying the allegations of fraud and alleging that complainant, Seibels, and Taber, were active in the business of the Montgomery Company as directors with Seibels as

President and Taber as the Secretary and Manager exercising active management of the business of the Montgomery Corporation; that they accepted benefits therefrom and, therefore, were estopped to assert that the business was fraudulent or mismanaged.

It is alleged that after the cause was at issue and the parties had been extensively interrogated showing that a matter of accounting was involved, the court appointed a Special Master to hear evidence and state the account between the Montgomery Company and the petitioner. A copy of said order is made an exhibit to the petition. The petition further alleges that the parties began taking testimony before the Special Master on March 3, 1950, and that said hearings were held on fifteen different days up to June 7, 1950, when a final decree approved by all the parties was rendered by the court by which the reference was withdrawn and the Special Master relieved of making a report. A copy of the final decree is attached as an exhibit.

The decretal order appointing the Master stated: The Special Master shall be entitled to *reasonable compensation for his services* to be taxed as a part of the costs of the cause and the complainants and the respondents each are required by the court to deposit with the Register of the court within ten days of this date $250.00 and such additional amounts as may be ordered by the court to be advanced from time to time to the Special Master on account of his compensation.

The final decree entered by the court is in the following words: "This cause being submitted for final decree upon the pleadings and the evidence taken before the Special Master whose report has been waived by the parties, as noted by the Register, It is ordered, adjudged and decreed by the court that the individual respondents in this case are not guilty of any fraud, conspiracy or mismanagement in the management of Montgomery Loan & Finance Company, Inc. and that there was no unfairness in the business transactions between that corporation and the Industrial Finance & Thrift Corporation and that neither the complainant nor the intervenor are

entitled to relief against the individual respondents nor is the Industrial Finance & Thrift Corporation guilty of doing business in Alabama in violation of the statutes requiring foreign corporations to qualify to do an intrastate business but as the two said corporations have, to some extent, had interlocking directors, the court has examined into the equities arising out of the business dealings and transactions between the two companies and finds that beginning with the organization of Montgomery Loan & Finance Company, Inc. in the early part of 1943 and during the balance of that year and also during subsequent years Industrial Finance & Thrift Corporation in buying or discounting commercial paper from Montgomery Loan & Finance Company, Inc., in large quantity and value was able to enjoy the benefits it derived from the large volume of business originated by Montgomery Loan & Finance Company, Inc. during the time the complainant and intervenor were actively managing the affairs of that company, and Industrial Finance & Thrift Corporation has been substantially enriched during said period of time as a direct result of the individual efforts and activity of the complainant and intervenor and they have an equitable claim against Industrial Finance & Thrift Corporation by reason of said facts and that company should be required to pay them a reasonable amount for each of the years in which their actively inured the benefit of Industrial Finance & Thrift Corporation. It is, therefore, ordered that:

"1. The complainant and intervenor have and recover of Industrial Finance & Thrift Corporation $6392.00 for the year 1943, $13,328.00 for the year 1944, $11,662.00 for the year 1945, and $2618.00 for the year 1946, or a total of $34,000.00, for which let execution issue.

"2. The bill is *dismissed with prejudice* as to Dan M. White, W. R. Brunson, Thomas O. Crosby and Paul W. Gillaspy.

"3. The costs of the cause including the costs of the reference and *the compensation of the Special Master,* but not including any fees for the attorneys for complainant and intervenor or compensation for their accountants, are assessed against Industrial Finance & Thrift Corporation, for which let execution issue.

"4. All other relief prayed for either by complainant or intervenor is denied.

"5. Done this June 7, 1950.
"Walter B. Jones, Presiding Circuit Judge."
[Italics supplied.]

The petition further alleges that the petitioner is without adequate remedy to review said decretal order fixing the allowance to the Special Master and that it is grossly excessive for the reason that some of the testimony taken in minority stockholder's proceeding has never been transcribed and the reporter who took the stenographic notes has left the State of Alabama and now resides in the State of Texas, and that to present a complete record in said original cause the costs thereof would be prohibitive of such appeal because of the cost thereof.

On the presentation of said petition duly verified by oath, we granted a rule nisi addressed to the trial Judge to show cause why the writ of mandamus should not issue. We later issued a restraining order prohibiting the respondent from enforcing the order of July 20th, 1950 pending a hearing on the petition for mandamus.

The respondent Judge in response to the rule filed motion to strike the petition, demurred thereto and filed his return stating in substance the factual background of this proceeding as heretofore stated, and other facts as to the complicated issues and questions involved in the stockholder's bill, which fell within the scope of the Special Master's authority to examine under the decree of reference, and denied that the allowance made for his services was excessive or an abuse of the court's discretion. The return admits that the petitioner is a nonresident of the state and had not qualified to engage in business in Alabama. The answer also asserts that the petitioner has an adequate remedy to review the order complained of by appeal and alleges that the burden and costs of presentation of a full record to the Supreme Court does not render the remedy by appeal inadequate.

The petition for writ of prohibition was consolidated with mandamus proceedings and the case was argued and submitted on the part of the petitioner on its petition, the replication controverting the . facts stated in the return and on evidence in support thereof, and on motion to strike the respondent's demurrer. The case was submitted on the part of the respondent on motion to strike the petition, the demurrer to the same and the answer and return to the rule nisi.

Petitioner's motion to strike the respondent's demurrer to the petition is rested on the ground, among others,—and the only ground argued,—that the demurrer was waived or withdrawn by filing the answer return before invoking a ruling on the demurrer. This point is not well taken. It has been the uniform practice in this court to permit pleadings to be so filed in cases such as this, without prejudice, in order to expedite submission on all points involved and give the court an opportunity to consider all questions presented on the record in consultation after the questions have been fully examined and opinion prepared thereon. That is not to say that the court in the exercise of its sound discretion may not rule on such questions of practice and procedure from the bench, where they are not difficult or are frivolous.

The decisions cited wherein a different rule has been applied by one judge, nisi prius courts, in common law actions and approved here, are not apt, such as Gribsby's Ex. and Ext'x. v. Nance, 3 Ala. 347, 349, where it was observed by the court: "It has been so often decided, as to be now undisputedly settled, that where a defendant demurs and pleads to the entire declaration, his plea being posterior in the order of proceeding, is a tacit withdrawal of the demurrer, or an admission that it should not be sustained; and he cannot be allowed to allege on error, the omission of the Court to render judgment upon it."

Another point sought to be raised by the motion to strike and here argued is that the petitioner seeks to invoke the issuance of mandamus in lieu of appeal. This goes to the sufficiency of the petition to warrant this court in granting mandamus and is not properly raised by motion to strike. Alabama Great Southern Railroad Co. v. Clark, 136 Ala. 450, 461, 34 So. 917; 5 Mayf.Digest, pp. 762–763, § 33.

We now proceed to consider the sufficiency of the petition as against the demurrer filed. Many of the grounds assigned are speaking demurrers, alleging facts not stated in the petition. These grounds will not be considered or treated.

The respondent's demurrer takes the points: (1) that it affirmatively appears from the averments of the petition that the petitioner has an adequate remedy by appeal and seeks to substitute therefor mandamus for the sole reason that the costs of transcribing the record in the stockholder's proceeding is prohibitive of such appeal; (2) that mandamus will not lie to control the court's judicial discretion in fixing the allowance for the services of the Special Master to be taxed as part of the costs.

If the point stated above indicated by "(1)" is based on a right of appeal from the final decree of June 7th, it is without substance, for the reason that a judgment or decree rendered by consent or on confession will not support an appeal. Max J. Winkler Brokerage Co. v. Courson, 160 Ala. 374, 378, 49 So. 341; Murphree v. Whitley, 70 Ala. 554; Wilson v. Collins, 9 Ala. 127. If an appeal could be based on such decree, it would not be an adequate remedy. "A confession of judgment is in law a release of errors." Code of 1940, Tit. 7, § 813; McNeil v. State of Alabama, 71 Ala. 71.

As to the point indicated by "(2)" touching the fixation of the amount of the fee to be allowed the Special Master, the order of the court appointing the Special Master specifies *inter alia:* "The Special Master shall be *entitled to reasonable compensation for his services * * *."* This recital clearly indicates that the fee to be allowed the Special Master is on *quantum meruit,* to be determined on appropriate pleadings. and evidence showing the value of the services performed and not as a matter of judicial discretion. Wister v. Foulke, 6. Phila. 26; Levi v. Beadles, 205 Ill.App. 488. [Italics supplied.]

Therefore the alleged cost of presenting to this court a full and complete record of the proceedings in the case of Seibels et al., v. the Petitioner and others is clearly fallacious. The original files of the circuit court if material were available as evidence with other evidence going to show the services performed by the Special Master and the reasonable value thereof.

The only person interested in such determination was Paul Thomas, the Special Master, who was not a party to the litigation, and Industrial Finance & Thrift Corp., the one to be charged. The basis of the liability was *ex contractu,* resting on the agreement of settlement noted in the final decree of June 7th, 1950. This determination, of course, could have been well made in the final decree or in advance thereof on appropriate pleading such as motion or petition filed by Thomas and notice in writing to the person liable, pending the litigation, on notice in writing personally served on the solicitor or attorney of Industrial Finance & Thrift Corporation. Such action would have invoked the court's authority. Code of 1940, Tit. 7, § 253; Riddle v. Adams, 231 Ala. 596, 165 So. 848. "* * * It is settled that formal pleadings in courts of equity as well as in courts of law are essential to invoke the court's jurisdiction, and are essential to the due administration of justice by the formation of the issues of law and fact, and cannot be ignored or abolished. By the pleadings in the case issues are presented with certainty to a common intent for the protection of the parties against repeated trials of the same issues. By them the finality of the election of remedies is made certain, and other conserving principles are assured, including a trial of such issues according to the course of the common law, and due process under the constitution. Ex parte Wilkey, 233 Ala. 375, 172 So. 111; Woodward Iron Co. v. Marbut, 183 Ala. 310, 62 So. 804; McDonald v. Mobile Life Ins. Co., 56 Ala. 468; State v. Bush, 12 Ala. App. 309, 68 So. 492." Ex parte Gilbert, 253 Ala. 232, 234, 43 So.2d 816, 818.

The 5th Circuit U. S. Court of Appeals affirms this rule, Judge Bryan writing in U. S. Fidelity & Guaranty Co. v. Union Indemnity Co., 56 F.2d 147, citing our cases.

The burden was on Thomas and he had the right to intervene before the final decree was entered under Rule 37, Equity Practice, Code of 1940, p. 1082, Tit. 7, Appendix, which prescribes the appropriate and necessary pleading to be filed.

There can be no doubt that the final decree of June 7th, 1950 entered by consent of the parties terminates the *lis pendens* in the case of R. E. Seibels et al. v. Montgomery Loan & Finance Company et al., and no duty rested upon the petitioner here, who recovered nothing, to further attend the court in that case in the absence of notice given to it as authorized by the law of the land constituting due process. Stringer v. Echols, 46 Ala. 61; Murray & Durand, Ex'rs, v. Tardy, 19 Ala. 710; Yonge v. Broxson, 23 Ala. 684; Sweeney v. Tritsch, 151 Ala. 242, 44 So. 184; Ex parte Krasner, 249 Ala. 640, 32 So.2d 678; State v. Bush, 12 Ala.App. 309, 312, 68 So. 492; Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565; Ex parte Wilkey, 233 Ala. 375, 172 So. 111.

It appears without dispute that the decree of July 20th, 1950, was rendered at an informal conference between the trial judge, the Special Master and the attorneys who had appeared for the parties in the Seibels' case without pleadings of any sort and without service of notice of any sort issued to or served upon the petitioner in the Seibels' case or the former attorneys of petitioner. We quote from the transcript of the proceedings leading up to said decree of July 20th, 1950.

"The Court: Gentlemen, I suggested to Mr. Thomas, who served as Special Master in this case, that in the event of not having an agreement about his fees, I have asked all the interested parties to meet with me here at this time on that matter. Right at this time I think the Court has got a right to fix those fees for his services in that capacity. However, I would like to hear from you on that. I believe you left a time sheet with me. Do you have that Mr. Ball?

"Mr. Ball: Yes.

"Mr. Thomas: Your Honor, it was my impression that the proceeding this afternoon was to be in the nature of an informal conference, inasmuch as an agreement had not been reached, and on that basis I am here to meet with the others on that matter. * * *."

After the lapse of thirty days from the rendition of the final decree of July 7th, 1950, as the statute provides, "the court shall lose all power over it, as completely as if the end of the term had been on that day, unless a motion to set aside the judgment or decree, or grant a new trial has been filed and called to the attention of the court, and an order entered continuing it for hearing to a future day; * * * ." Code of 1940, Tit. 13, § 119; First Nat. Bank v. Garrison, 235 Ala. 687, 180 So. 690; Ex parte Howard, 225 Ala. 106, 142 So. 403; Ex parte Favors, 225 Ala. 675, 145 So. 146; Ex parte Sparks, 254 Ala. 595, 49 So.2d 296.

The question decisive of this case, manifest on the record, is whether or not the attorney who represented the defendants in the Seibels case and who now prosecutes this proceeding had authority to waive due process notice to defendant by appearing in the informal conference in which the court assumed the power to judicially fix the amount of allowance to the Special Master on the *quantum meruit* without the court's jurisdiction being invoked by Thomas by petition, motion or otherwise.

"The power of an attorney is not co-equal, co-extensive, or the equivalent of that of the client. He is, as has been said in numerous decisions of this court, *a special agent,* limited in duty and authority to the vigilant prosecution or defense of the rights of the client. He can enter into no bargains or contracts, though he may make agreements in writing touching the course of proceedings *in pending suits, or the issue or return of executions on judgments he may have obtained,* which will bind the client, unless he has specially authorized or subsequently ratified them. 1 Brick.Dig. 191, § 30; Albertson v. Goldsby, 28 Ala. 711. * * *." [It.Sup.] Robinson v. Murphy, 69 Ala. 543, 547; Smith v. Gayle, 58 Ala.

600; Cook v. Parham, 63 Ala. 456; Wright v. Evans, 53 Ala. 103; Glass v. Glass, 76 Ala. 368.

"It is a general principle that an attorney cannot, by virtue of his general authority as attorney, bind his client by any act which amounts to a surrender or waiver in whole or in part of any substantial right of the client, * * *." 5 Am.Jur. p. 300, § 70.

There is nothing in the averments in the petition for mandamus showing that Mr. Ball had been given special authority either to waive notice to defendant of the proposed conference to fix the allowance of the Special Master or to have the amount of said allowance determined in an informal conference without appropriate pleadings.

We are, therefore, of opinion that the circuit court of Montgomery County was without jurisdiction to enter the alleged decree of July 20th, 1950, and that the same is void. Ex parte Krasner, 249 Ala. 640, 32 So.2d 678. The petitioner may have said judgment vacated on motion in the trial court. Sweeney v. Tritsch, 151 Ala. 242, 44 So. 184; Max J. Winkler Brokerage Co. v. Courson, 160 Ala. 374, 49 So. 341; Ex parte Sparks, supra; Ex parte Brickell, Judge, 204 Ala. 441, 86 So. 1. The effect of the alleged judgment of July 20th, 1950, was to alter the final judgment of June 7, 1950, *after the court had lost all power over the same.*

The petitioner under the authorities last cited has a clear and adequate remedy to have said judgment of July 20th, 1950, vacated on motion. The respondent's demurrer is, therefore, due to be sustained. Thomas is not without remedy. He may recover on the *quantum meruit* for the services rendered in an action of assumpsit. Aikin v. Bloodgood, 12 Ala. 221.

I am, therefore, of opinion that the petition for mandamus should be denied and petition dismissed. I am further of the opinion that the alleged order of July 20th, 1950, is void and that the temporary writ of prohibition issued pending the application for mandamus should be made permanent.

470

Mandamus denied. Writ of prohibition made permanent.

FOSTER, LIVINGSTON, LAWSON and STAKELY, JJ., concur that the mandamus should be denied for the following reasons.

██ The circuit court entered a decree fixing the costs including the Master's fee against Industrial Finance & Thrift Corp. It is true that this was a consent decree but this is not the decree which is sought to be reviewed. The amount of the Master's fee was not fixed in the original decree which means that the court had the inherent power in the matter of costs to fix the master's fee in a supplementary proceeding. There is no requirement that a proceeding of this kind must be had within the thirty day period fixed by the statute since as to the matter of costs the cause remained *in fieri,* that is within the control of the court. Accordingly we do not think that the decree fixing the Master's fee was beyond the power of the court. We further think that the amount of the fee was a matter for judicial determination by the court. It is true that there was no formal pleading on which the hearing to fix the fee was had, but the parties, including the Master, all appeared without objection before the court in order to fix the Master's compensation and evidence including testimony of the Master was offered before the court as to the reasonable value of the services. Under these circumstances we think that formal pleading in the present proceeding was and could be waived. 33 C.J. p. 1133, 49 C.J.S., Judgments, § 40.

▪██ But it is argued that mandamus should lie because appeal does not lie. It is said that the Master, if he had become dissatisfied with the decree, could not have appealed because he is not named in the decree. There was no need for him to be designated by name in the decree where the entry of the decree in connection with the record of the cause leaves no doubt that he is the party for whom the decree was rendered. 33 C.J. pp. 1197–1198, 49 C.J.S., Judgments, § 75; Harduval v. Merchants' & Mechanics' Trust & Savings Bank, 204 Ala. 187, 86 So. 52.

From the said decree of July 20th both Thomas and the petitioner here had the right to appeal.

Mandamus denied.

Petition for prohibition dismissed.

FOSTER, LIVINGSTON, LAWSON and STAKELY, JJ., concur.

SIMPSON, J., not sitting.

On Rehearing

SIMPSON, Justice.

Not having participated on the original deliverance, my views were not recorded; but having been called in on a consideration on rehearing, I should like to state that I concur with the views of the majority except the portion which denies mandamus as a proper remedy. Undoubtedly the fixation of the Master's fee in the manner pursued by the court was clearly within its power and the amount thereof was a matter for that court's judicial determination.

However, under the peculiar circumstances indicated by the record before us, it seems to me that the remedy by appeal could not be said to be at all adequate, of consequence of which, under the liberal rule of our authorities, it would be within our discretion to permit a review by mandamus. Ex parte Weissinger, 247 Ala. 113, 22 So.2d 510; Ex parte Tower Manufacturing Co., 103 Ala. 415, 15 So. 836; Foshee v. State, 210 Ala. 155, 97 So. 565; Ex parte Sovereign Camp W. O. W., 20 Ala.App. 531, 104 So. 899. For general authorities, see 34 Am.Jur., Mandamus, p. 839, § 44; 55 C.J.S., Mandamus, § 17b, p. 47.

True, as observed in the majority opinion, both Thomas and the petitioner (Industrial Finance & Thrift Corp.) had the *right* of appeal, but that is not the criterion which determines the availability of remedy by mandamus. The rule is that if there be no other legal remedy *adequate* to the correction of the error and the prevention of the injury, mandamus may be awarded. Cases, supra.

A good statement of the principle is found in American Jurisprudence, supra, to the effect that "the remedy which will

preclude mandamus must be equally convenient, complete, beneficial, and effective as would be mandamus." Or as stated in 55 C.J.S., Mandamus, § 17b, supra, "The mere fact that there is another remedy will not prevent the issuance of a writ of mandamus if the other remedy is not adequate, and, where it is doubtful whether or not there is an adequate specific remedy [here by appeal] in the ordinary course of law, mandamus will ordinarily issue."

I like the following statement of the rule found in Viles v. Korty, 133 Me. 154, 174 A. 903, 904: "A legal remedy may be inadequate because vexatiously inconvenient or involving extraordinary expense and annoyance or undue delay."

But I forego further citation of authority. As to the inadequacy of the remedy by appeal, the petition shows that the redress of the grievance by the decision below in allowing a seemingly excessive Master's fee can only be effectively remedied by mandamus. So in this posture of the case, it seems to me, the court should invoke its discretion and allow mandamus to review the order.

So considered, I also dissent from the contrary view of the majority.